### GARDNER SHATTUCK *vs.* ANTIPAS MAYNARD.

Where an individual, having a wife residing in *G.*, went to *K.*, and there labored eight months, returning to *G.* on Saturday nights, and passing Sundays with his wife—it was held, that he was liable to do duty in the militia in *G.*, and not in *K.*

THIS was an appeal from the judgment of a justice of the peace, in this county, and was submitted to the decision of the court, upon the following facts.

*Shattuck* is the clerk of the first company of infantry in Keene ; and the defendant, being enrolled in said company, and duly warned to appear on parade on the 6th May, 1823, neglected to appear ; and this prosecution was brought to recover the forfeiture supposed to be incurred by *Maynard*, for neglect of military duty on that occasion. *Maynard* removed to Gilsum, in this county, with his parents some time about the year 1808, he being then of about the age of seven years, and resided there until the year 1822. In February, 1822, he went to Ashburnham, in Massachusetts, with the intention to make that place his permanent residence ; but in the November following, he changed his intention and returned again to Gilsum. In December, 1822, he married a woman, belonging to Ashburnham, and brought his wife and furniture to Gilsum, where he and his wife resided in the family, and had a room in the house, of a Mr. *Kilburn*, until March, 1823, when *Maynard* went to Keene, and contracted to labor in Keene, for a Mr. *Holbrook*, eight months ; but it was agreed, that *Maynard* should be absent from Sat-

Shattuck
*vs.*
Maynard.

urday night to Monday morning each week, board himself on Sunday, and procure his washing to be done at his own expense. While *Maynard* was thus engaged in Mr. *Holbrook's* service, his wife resided in Gilsum, as before, and he returned every week to Gilsum, and passed Sunday with his wife, was taxed in Gilsum, and did military duty there.

RICHARDSON, C. J. delivered the opinion of the court.

The statute of 1820, cap. 36, sec. 4, enacts, " that " each and every free able bodied white male citizen of " this state, resident therein, &c., or who may hereafter " come to reside in this state, &c., shall severally and re- " spectively be enrolled in the militia by the captain, &c., " of the company, within whose bounds such citizen shall re- " side ;" and the question which this case presents for our decision is, whether *Maynard* resided within the limits of the first company in Keene, so as to be liable to do military duty there ?

The word " reside," is used in two senses ; the one constructive, technical, legal ; the other denoting the personal, actual habitation of individuals. When a person has a fixed abode, where he dwells with his family, there can be no doubt as to the place where he resides. The place of his personal and legal residence are the same. So, when a person has no permanent habitation or family, but dwells in different places, as he happens to find employment, there can be no doubt as to the place, where he resides. He must be considered as residing where he actually or personally resides.

But some individuals have permanent habitations, where their families constantly dwell, yet pass a great portion of their time in other places. Such persons have a legal residence with their families, and a personal residence in other places ; and the word " reside," may, with respect to them, be used to denote either their personal, or their legal residence. The books furnish ample illustrations of this distinction. 1 *Dallas* 152, *Burnet's case.—Ditto* 241, *Penman vs. Wayne.—*2 *Peters Ad. Decisions* 442.—2 *Robinson* 322, *The Harmony.—*2 *Caines' Rep.* 317, *Fitzgeral's case.—* 16 *John.* 128, *Elbers et a. vs. The United Insurance Com-*

*pany.*—1 *Bin.* 351, *note.*—4 *Mass. Rep.* 312, *Abington vs. Boston.*—7 *ditto* 1, *Granby vs. Amherst.*—11 *ditto* 350, *Lincoln vs. Hapgood.*—*Ditto* 424, *Williams vs. Whiting et a.*—10 *ditto* 488, *Putnam vs. Johnson et a.*—1 *Strange* 60.—5 *D. & E.* 664.—2 *Bos. & Pul.* 229, *note.*—*Vattel B.* 1, *cap.* 10, *sec.* 218.

In this case, *Maynard* had a wife residing at Gilsum, with whom he passed his Sundays. His furniture was at Gilsum. His residence at Keene was merely temporary. Under these circumstances, it cannot be doubted, that he had a legal residence in Gilsum ; and it is equally clear, that he had a personal residence in Keene a great portion of his time. The question then is, does the statute make a man liable to do military duty in the place, where he has his legal, or where he has his personal residence ?

This point has been decided by the supreme court of Massachusetts, in the *Commonwealth vs. Walker* (4 *Mass. Rep.* 556,) where it was decided, that a private in the militia was not discharged from the company, to which he belonged, by an absence of six months from the brigade, without intention of changing his domicil. If the principle of that decision be correct, *Maynard* must be considered as liable to do military duty in Gilsum, where he had his legal residence.

In adopting a rule, which is to determine where each individual is liable to do military duty, it is very important, that it should be simple and easily applied, that neither the officer, nor the private may be embarrassed in the application of it. In this instance, we are inclined to think, that there has been a very general understanding among the militia officers, that privates were to be enrolled and to do military duty in the places, where they had their legal residence; and that they did not cease to be members of a company, by any temporary absence from its limits. Indeed any other rule would lead to very great uncertainty ; and we think, that great respect is due to the construction, which has been put upon the statute by militia officers.

In this case, the private not only had his legal residence in Gilsum, but he did military duty there ; and we are inclined to think, that this suit must have had its origin in a belief,

Shattuck
*vs.*
Maynard.

that *Maynard* had not a legal residence in Gilsum, rather than in the supposition, that if he had, he could be held to do duty in Keene.

It is, therefore, the opinion of the court, that there be *Judgment for the respondent.*