## HART *v.* LINDSEY.

A single letter intervening between the christian and surname, is no part of either,—*semble.*

Evidence that the inhabitants of a certain district had for forty years been accustomed to do military duty in a particular company, is sufficient to show that it is within the limits of that company.

A minor, whose parents reside at the domicil of his birth, in general retains that domicil. If, on coming of age, he go elsewhere to reside, without an intention of removing thence to another determinate place, the place to which he thus goes, becomes his domicil; and he retains that domicil, although he goes to another place for a temporary purpose, intending to return.

COMPLAINT, originally filed before a justice of the peace, by Hart, as clerk of the 8th company of infantry in the 33d regiment, being the north company in Milton, to recover a fine of two dollars for neglect to appear and do military duty on the 16th day of May, 1843.

The records of the company and proceedings of the officers, &c., were admitted to be correct, except as hereinafter excepted to.

The plea was the general issue, with a brief statement, denying that the defendant ever resided within the limits of said company, alleging that he was an inhabitant and resident in Shapleigh, in the county of York, and State of Maine.

It appeared by the roll-book of the company that the name of John *H.* Lindsey, as corrected in April last, was regularly borne thereon, but on the order of the captain to the warning sergeant, was the name of "John Lindsey," there being no "H," or middle initial; but the return of the sergeant on the back of the order was, that he had warned the within "John H. Lindsey," &c.

Evidence was offered tending to show that the "H" was omitted by mistake, and that the defendant was the person intended, and that there was no other name of "Lindsey" on the roll. The captain, on motion, was permitted by the court to amend his order, by inserting the

initial "H" between the John and Lindsey, the defendant objecting.

The clerk was also permitted to amend his records in the same manner, to which the defendant objected.

No record was produced to show the limits of the 8th company; but parol evidence was admitted, to prove that the Mill-Village was within the limits of said company, and that the soldiers in that village had always been warned, and had done duty in that company for forty years.

The witnesses testified that they knew where the limits of said company were, and that they extended some three miles further south than the Mill-Village. The evidence further tended to show, that the defendant was a native of Shapleigh, in Maine, where his father now resides; that he had always resided with his father till the first of March last, when he went to Acton, in Maine, as a student in medicine, with Doctor Caleff, who resided with his family in Acton, but kept his office across the river, in Milton, where his students studied, but boarded with him at his house in Acton; that the defendant so boarded with Dr. Caleff, till the 10th day of said March, when, in consequence of sickness in the doctor's family, it was inconvenient for the defendant to board there for a time, and he left and hired his board with Aaron H. Hodgdon, in Mill-Village, in Milton, for a few weeks, intending to return again to Dr. Caleff's as soon as circumstances should allow. He continued so to board at Hodgdon's, till the 3d day of June following, and then left, during which time he was enrolled and warned as above stated.

He had his lodging and washing done at Hodgdon's, except occasionally he was absent at his father's for a day or two at a time on a visit, and had some washing and mending done at his father's.

The court instructed the jury that if they found he went to board with Hodgdon for an indefinite time, and boarded there from the tenth of March till the third of

June, which included the time of his enrollment, warning and the training, and that he was within the limits of the 8th company during that time, that this would constitute such a residence as to make him liable to do military duty in said company for the time being, and that he would be liable for any neglect to do so, when duly warned; that this was not such a temporary residence as would excuse him from such liability, as it would have been had he been the remerely on a visit, or for the transaction of some specific business, without intending to change his home; that although he might retain his legal settlement at Shapleigh, and might have voted and paid taxes there the preceding year; still, his adopted home and place of residence was Milton for the time being, so as to make him liable to do military duty there.

The jury returned a verdict of guilty, whereupon the defendant moved the court to set aside the verdict and for a new trial, on account of error in the foregoing rulings and instructions of the court.

*Wells,* for the defendant, to the point that the limits of the company were not properly proved, cited N. H. Laws, ed. 1792, 358; N. H. Laws, ed. 1805, 159. These laws provide that towns, having a certain number of inhabitants, shall have a specified number of military companies. Alterations were to be made by the officers, and should be shown by the record. Parol evidence for that purpose is inadmissible.

The residence of the respondent was not such as to render him liable to military duty within the town where he was enrolled. His residence there was but temporary. 4 Mass. 556; 1 Pick. 194; 3 N. H. Rep. 123; 16 Maine 238.

*Hobbs,* for the plaintiff. I. Parol evidence was properly admitted to prove that the defendant resided within the limits of the company.

No records of the limits of the companies were authorized by the statutes to be made till the statute of January 2, 1829. N. H. Laws 425 (ed. 1797), and 259 (ed. 1805); N. H. Laws 298 (ed. 1815); N. H. Pamphlet Laws, (June session of 1819) 194; 2 N. H. Laws, 66 (Hill's edition); N. H. Laws 386, 387–391 (ed. 1830); Rev. Stat., chap. 84, sec. 1, p. 166.

In June, 1835, said company was severed from the 39th and annexed to the 33d regiment, and now constitutes a part of this regiment. N. H. Pamphlet Laws 193; Rev. Stat., chap. 92, sec. 33, p. 177.

After à lapse of forty years it is to be presumed that the company was duly limited by the law in force at the time it was formed, and that the limits have continued unaltered. 6 N. H. Rep. 435, *State* v. *Leonard ;* 2 N.-H. Rep. 310, *Society* v. *Young ;* 3 Stark. Ev. 1250.

II.. In the case at bar, the defendant resided within the limits of the company, within the meaning of the Rev. Stat., chap. 77, sec. 1, p. 157; Story's Conf., sec. 42. The time was indefinite. Story's Conf. 45 (1st ed); 13 Maine Rep. 225.

· In *Commonwealth* v. *Walker*, 4 Mass. 556, one question was, whether a temporary absence, without intention to change the domicil, was sufficient to impeach the enlistment into the artillery company. In *Commonwealth* v. *Swan*, 1 Pick. 194, the defendant was in Medford, on a visit or special business, without any intention of changing his domicil. In *Stone* v. *Osgood*, 16 Maine 238, the same principle applies. In *Shattuck* v. *Maynard*, 3 N. H. Rep. 123, the defendant was in Keene for a limited time, and temporary purpose, and without any intention of changing his domicil. His family resided in Gilsum. Story's Conf., sec. 46.

III. The case finds that the defendant was enrolled and warned by the name of John H. Lindsey. The amendment of the order issued by the captain was properly

Hart v. Lindsey.

allowed. 10 N. H. Rep. 291, *Whittier* v. *Varney*; 5 N. H. Rep. 573, *Burnham* v. *Bank*.

The clerk was authorized to amend the record by the Rev. Stat., chap. 78, secs. 3, 4, pp. 158, 159.

The complainant contends that the order was sufficient without the amendment. 5 Johns. Rep. 84, *Franklin* v. *Tallmadge*; 3 Stark. Ev., 1137, 1138, 1601, 1603.

Woods, J. Several questions are presented in this case: 1. Could the amendment legally have been made, that was made in the order? By sec. 4, chap. 78, of the Rev. Stat., the return of the sergeant or private who delivers the order may be amended; as may the record also, to conform to the facts of the case. In this case, neither the return nor the record needed amendment. Each was in conformity with the truth, without amendment.

But there was no authority to amend the order issued by the captain. Such as they were, they were or ought to have been executed; and the question is, whether they were executed by the sergeant, and whether he warned the person whom he was required to warn. He warned the person who was enrolled. Was he ordered to warn him? The person indicated in the order was John Lindsey, and the person warned was John H. Lindsey. Was the person warned properly designated in the order, by the name of John Lindsey?

When the name is a foreign one, the variance of a letter which, according to the pronunciation of that language, does not vary the sound, is not a misnomer; as Petris for Petrie. *Petrie* v. *Woodworth*, 3 Caines 219. And to a plea of misnomer, a replication that the defendant is as well known by the one name as by the other, is good.

And the writ will not abate, on the ground that the name of the defendant is spelt in the writ differently from his usual manner of spelling it, provided both modes of

spelling have the same sound. *Tebbetts* v. *Kiah*, 2 N. H. Rep. 557. The same principle is recognized in 1 East 542 ; 2 Taunt. 401; 2 Caines 362, *Meredith* v. *Hinsdale.*

But the principle of *idem sonans* does not settle the present question, since it is plain that the name sounds differently, according as it read with or without the initial letter of the middle name.

Nor does it appear that the defendant is known as well by one name as by the other; and the question really is, whether the middle letter " H" is any part of the defendant's name, the omission of which would leave it a different name.

In *Franklin* v. *Tallmadge*, 5 Johns. 84, the court held that the omission of the letter T between the christian and surname was immaterial. " It was no part of his name, for the law knows only of one christian name."

In *Roosvelt* v. *Gardiner*, 2 Cow. 464, a question arose upon the validity of an order of a judge for the stay of proceedings for a certain purpose. In the title of the order, in the name of Cornelius V. S. Roosvelt, the letters V. S. were omitted. The court held that those letters were no part of the plaintiff's name, and cited the case of *Franklin* v. *Tallmadge.*

In *Keene* v. *Meade*, 3 Pet. 1, Meade having instituted a suit against Keene, a commission was issued to take evidence to establish the claim of the plaintiff, whose name was Richard *W.* Meade. But in the commission he was described as Richard *M.* Meade, and on trial the defendant's counsel objected to the reading of the commission, but the objection was overruled. Mr. Justice *Thompson,* who delivered the opinion of the court, said : " It may well be questioned whether the middle letter formed any part of the christian name of Meade. It is said the law knows only one christian name, and there are adjudged cases strongly sustaining, if not fully establishing, that the entire omission of the middle name is not a misnomer."

He cited 5 Johns. 84, and the cases there referred to, and further said, "If so, the middle letter is immaterial, and may be stricken out or disregarded." But there was another ground, upon which the case may well be supposed mainly to have turned, namely, that there was a joint commission for each party, and so neither could object to it.

In *Hutchins* v. *Gibbie*, 2 Chit. 235, in which the plaintiff's name was, in the commencement of the declaration, stated to be James Toll Hutchins, the defendant demurred specially, because he was, throughout the subsequent part of it, called "said James," and it was held sufficient, because *non constat* that the " Toll " was part of the surname.

In *Wood* v. *Fletcher*, 3 N. H. Rep. 61, it appeared that John A. Fletcher, a son of the defendant, was enrolled in the company by the name of John Fletcher. He appeared at the training, answered to the name of John Fletcher, but was not equipped as the law required. The court said : " He appeared at the muster, and answered to the name of John Fletcher, and it seems to be too late now for him or his guardian to make this objection."

In *Commonwealth* v. *Perkins*, 1 Pick. 388, which was an indictment against the defendant by the name of Thomas Perkins, junior, the defendant pleaded, in abatement, that his name was Thomas H. Perkins. The court said : " It is said, on the part of the commonwealth, that 'junior' is no part of the name. This is true, but another objection to the indictment is, that the defendant is called Thomas, instead of Thomas Hopkins. In 5 T. R. 195, a person was sued by the name of James Richard, instead of Richard James, and it was held a misnomer, on account of the transposition. The indictment must give the defendant his right christian name."

In *Commonwealth* v. *Charles Jones Hall*, 3 Pick. 262, the question was, whether the defendant was duly enrolled, so as to be liable to do military duty. The roll contained

the name of Charles Hall, but not the name of Charles Jones Hall, which was the name of the defendant. *Morton,* J., in delivering the opinion of the court, said: "It needs no argument to prove that Charles and Charles Jones are different names. The defendant was not therefore duly enrolled." He cited the case last referred to.

These authorities tend to show, that while a middle name is essential as a part either of the christian or surname, the letter which is sometimes inserted between the christian and surname is not a part of either, and may be omitted in reading. Such we conclude to be reasonable doctrine. If the middle initial letter be a consonant, it must, if sounded at all, be joined either with the preceding or with the following syllable. This, if practicable, would change the name, contrary to the intention of the writer. Letters that are not sounded need not be named in reading, but may be passed over as silent letters, and the omission of silent letters, according to the doctrine of *idem sonans,* does not constitute a variance or misnomer.

As to the evidence on which the complainant relied to prove the boundaries of the company, the statute provides (Rev. Stat., chap. 84, sec. 1), that "the field officers shall prescribe the limits, and alter and modify them, as they think proper. And every order making such alteration shall be recorded," &c. But it by no means follows that there may not be other evidence of the boundaries than such orders and the record of them afford. A presumption may well be founded upon the evidence in the case, that the limits had been in some way legally settled and defined. *Hammond* v. *Dunbar,* 24 Pick. 177; *Spaulding* v. *Bancroft,* 23, Pick. 54.

But another question in the same case is, whether the defendant was liable to do military duty, or to be enrolled agreeably to section 1, chapter 77, of the Revised Statutes; whether he was a citizen of this State, residing in Milton.

By the term "domicil," in its ordinary acceptation,

is meant the place where a person lives or has his home. Story's Conf., sec. 39. In strict legal sense, that is properly the domicil of a person where he has his fixed, permanent home and principal establishment; to which, whenever he is absent, he has the intention of returning. *Id.* Vattel has defined domicil to be a fixed residence in any place, with an intention of always staying there. B 1, chap. 19, sec. 22. It would be more correct to say, that that place is properly the domicil of a person; in which his habitation is fixed, without any present intention of removing. Story's Conf., sec. 42; *Putnam* v. *Johnson*, 10 Mass. 48.

To constitute a domicil, that is, to acquire it, two things must concur; residence, and the intention of making it the home of the party. To retain it after once acquired, actual residence is not indispensable; but it may be retained by the intention not to change it.

Mr. Justice *Story*, in the work already referred to, says: "If a person goes on a voyage to sea, or to a foreign country, for temporary purposes, but with an intention to return, such transitory residence does not constitute a new domicil, or amount to an abandonment of the old one." p. 42.

That writer has collected certain rules, adopted by jurists, to serve as guides in cases of familiar occurrence:

The place of a person's birth is his domicil, if it was the place of domicil of his parents at the time of his birth.

The domicil of birth, of minors, continues, until they have obtained a new domicil.

Minors are generally considered as incapable of changing their domicil during their minority. This results from the general principle, that a person who is under the power and authority of another, possesses no right to choose a domicil.

The place where a person lives is taken to be his domicil, until other facts establish the contrary. If a person

has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of present domicil, it becomes his domicil, notwithstanding he may entertain a floating intention to return at some future period.

A domicil once acquired, remains until a new one is acquired. Conf., sec. 46.

In *Shattuck* v. *Maynard*, 3 N. H. Rep. 123, *Richardson*, C. J., addressing himself to a question there presented, resembling in some respects the one now before us, remarks: " The word ' reside ' is used in two senses; the one, constructive, technical, legal; the other denoting the personal, actual habitation of individuals. When a person has a fixed abode, where he dwells with his family, there can be no doubt as to the place where he resides. The place of his personal and legal residence are the same. So when a person has no permanent habitation or family, but dwells in different places, as he happens to find employment, there can be no doubt as to the place where he resides. He must be considered as residing where he actually or personally resides.

" But some individuals have permanent habitations where their families constantly dwell, yet pass a great portion of their time in other places. Such persons have a legal residence in other places; and the word ' reside ' may, with respect to them, denote either their personal or legal residence."

That case decides that a person is liable to do military duty, by virtue of the act of 1820, in the place where he has his legal residence. The case of *Commonwealth* v. *Walker*, 4 Mass. 556, is cited and made the ground of the decision.

How stands the present case upon the principles stated and the cases cited? Lindsey had his domicil of birth in Shapleigh, in the State of Maine. If yet a minor, it remains there. If twenty-one years of age, and capable of

emancipating himself, his leaving his father's house, and going to Acton, may be considered as the act of emancipation, and the adoption of that place as his domicil. He does not appear, by the evidence, to have held a purpose of returning to the house of his father to reside; and in fact the case finds that when he went there, during the time of his residence in Milton, it was only on a visit.

Upon the principle, therefore, of *Putnam* v. *Johnson*, 10 Mass. 488, before cited, he probably acquired a domicil at Acton. It was there that his habitation was fixed, without having any other place to which he meditated returning as to a home.

He left Acton, as the case finds, with a view of pursuing his studies, and of obtaining board for a few weeks only, and with a full purpose of returning to Acton, his domicil, when circumstances should render it convenient to do so, which, according to his expectation, would soon happen.

He went to Milton, then, for a purpose temporary in its character, and with a design to remain there but a few weeks, and then to return to Acton. There was, under these circumstances, no change of domicil, or legal residence. That remained as before. And it having been decided that a liability to do military duty does not attach by a mere personal residence, and only in case of a legal domicil, it is plain that the defendant was not in this case liable. The verdict must therefore be set aside.

*New trial granted.*