Curtis et al. *v.* Lyman et al.

---

## GEORGE AND EDWARD CURTIS *v.* JOB LYMAN AND OTHERS.

### [IN CHANCERY.]

Where the mortgagee left his mortgage with the town clerk for record, and the clerk recorded the same at length, and so certified upon the mortgage, but made no alphabet or index of the said mortgage, it was held, that the mortgage was properly recorded within the meaning of the statute, and that the alphabet or index constitutes no part of the record, and the mortgage became an incumbrance upon the land from the time it was transcribed upon the record.

This case was decided in Windsor county, March term, 1849, and the opinion was sent to the Reporter, without any of the papers in the case, by Judge ISHAM, with the suggestion that the

same be reported, as it is referred to in the preceding case, *Hunter* v. *Windsor and West Windsor*.

The facts sufficiently appear in the opinion of the court, which was delivered by

HALL, J. This is an appeal from chancery. The bill is for the foreclosure of a mortgage in common form. The complainants are the mortgagees; one of the defendants, Edgerton, being the mortgagor, and another defendant, Lyman, being a purchaser under Edgerton.

The facts found and about which there is little or no controversy, are these:

Edgerton being indebted to the plaintiffs by note in the sum of $2000, mortgaged to them certain lands, which mortgage was transcribed upon the book of records of the town on the 11th of June, 1835, and duly certified as recorded; but no reference to the record was entered upon the alphabet. Subsequently, the defendant Lyman, without actual notice of the mortgage, and before the record of it was alphabetted, for the consideration of $5000, purchased the same land of the mortgagor, his deed being recorded Feb. 7, 1839. Both the mortgage and deed were received for record and certified as recorded by Edgerton, the mortgagor, who from March, 1835, to March, 1841, was the town clerk; and the reference to the mortgage was first entered on the index by the subsequent town clerk in August or September, 1844. There is no evidence that the mortgagees had any knowledge of the neglect of the town clerk to enter their mortgage on the alphabet, and they must be taken to be ignorant of it. No other objection is made to the record, but the want of an index to it, and it is to be treated as having been in all other respects regular and sufficient.

The question is, whether the neglect of the clerk to index the mortgage, shall render the record of it invalid, so as to postpone the title of the mortgagees to that of the subsequent purchase.

The determination of this question must depend upon the construction of the statutes of 1797 in relation to the recording of conveyances, which statutes were in force when both deeds were lodged in the town clerk's office.

The 5th section of the act for regulating conveyances of real

estate, specifies the several requisites of such conveyances. It declares "that all deeds or other conveyances of any lands, tene- "ments or hereditaments, lying in this State, signed and sealed "by the party granting the same, having good and lawful author- "ity thereunto and signed by two or more witnesses, and acknowl- "edged by such grantor or grantors before a justice of the peace, "*and recorded, at length, in the clerk's office of the town, in which* "*such lands, tenements or hereditaments lie,* SHALL BE VALID TO "PASS THE SAME, without any other act or ceremony in law "whatever."

If the language of this statute were to be taken in its ordinary sense and serve to control our decision, there would seem to be but little doubt of its effect. There would in regard to the mortgage appear to have been a full and literal compliance with the words of the statute. The mortgage had been *transcribed* at length in the town clerk's office, and by the proper officer, and duly certified as recorded; and that is what is commonly under- stood as constituting a record of it.

It is, however, said, that although the ordinary signification of the word recorded may be satisfied by what was done in this case, yet, that the act regulating town meetings and the choice and du- ty of town officers, is to be construed as providing an additional requisite to the record of conveyance — in other words, as in effect declaring that a deed shall not be considered as recorded, until an index to it is entered upon the alphabet.

No such language is, however, found in that act, nor do we think any intention to engraft such additional requisite upon a deed can be fairly implied from the language used. The object of the act is to point out the duty of the clerk, not only in the making of a proper record of conveyances, *but also in furnishing facilities for* their discovery, examination and use by all persons interested in them. And to secure the due performance of these duties the clerk is made liable to the party injured for the neglect of them, and to the security of the party injured is superadded, by a subsequent statute, the responsibility of the town. The index or alphabet, which it is the duty of the clerk to have annexed to his book seems to be one of the facilities to be used in making search for the record, not a part of the record itself. It is his duty to have an index, and to enter upon it a proper reference to

.every record of a conveyance, and for any neglect to do so, he and the town are liable for the damages any person may suffer by it. But it is not certain that any one will be injured by the neglect, and therefore the record itself should not be void. The clerk may know the place of the record and may point it out to all who may wish to examine it. A purchaser may take his deed relying alone upon the representations or covenants of his grantor, without desiring to examine the records. An index, or the want of it, would seem to be of no importance to him. So if without making any search or causing any to be made, a purchaser should rely solely on the representations of the clerk, that the title was clear, and those representations should be knowingly false, it is perhaps questionable whether he could be said to be injured by the want of an index. That would only seem to become important when an actual search of the records was desired to be made. The legitimate ground of complaint in such case would probably be the fraudulent representations of the clerk.

There are many practical difficulties in the way of making an index to the record an essential requisite to the validity of the title. The statute provides for an "index or alphabet." Are the two words used synonomously? Or have they here, as they often have, different meanings? Is it indispensable that the index should be in alphabetical order? If so, shall the name of the grantor or the grantee be alphabetted? Or shall there be two indexes, one of each? Must the Christian name be written at length, or will the initials be sufficient? It is obvious, that if an index is held to be an essential part of the record, the way will at once be opened for a serious and embarrassing course of litigation in settling by judicial construction, what shall constitute a sufficient index, and what departures from a prescribed form shall render the record invalid. And all this, perhaps, when there has been no real injury to any one in consequence of a defective index.

But if from the want of an index, or a proper entry upon it, the record is to be inoperative shall it be held absolutely void? If the reference to it upon the index be not made the instant the record is completed, is the record a mere nullity? Or may the record be restored and made operative by a subsequent entry upon the index? If so, when does the record take effect? If

from the entry on the index, how is the true time to be shown? Shall the clerk certify upon the record the time of the entry? That has never been done. The true time the record takes effect must then in all cases be left open to be proved by parol! In this case it appears by the evidence of the town clerk, that the plaintiffs mortgage was first alphabetted some time in August or September, 1844.

This evidence is quite too loose and uncertain, from which to determine when a record is to become operative, as all parol evidence necessarily must be. It is obvious, that if an entry of a deed upon the index is held to be essential to the validity of the record, that it must necessarily lead to inextricable confusion and uncertainty in regard to the priority of conveyances. Indeed, the difficulties in the way of a decision to that effect, appear to us to be insurmountable. On the other hand, we do not perceive but that the object of the statute's providing for the recording of deeds will be fully answered by leaving any body, actually sustaining an injury from the want of an index, or by a defective one, to his statute remedy against the clerk and the towns.

The case of *Sawyer* v. *Adams*, 8 Vt. R. 172, has been relied upon by the defendants' counsel, as having an important bearing upon the question in this. But our decision does not conflict with the law of that case. The facts in that case were peculiar. From them, the court found that there had been in effect no record of the deed upon the book of records. Chief Justice WILLIAMS, in delivering the opinion of the majority of the court, puts the case upon that ground. He says " that recording means the copying the instrument to be recorded into the public records of the town, in a book kept for that purpose, by or under the superintendence of the officer appointed therefor." This, the court held, had not in that case been done. But it had clearly been done in this case. The deed was copied by the town clerk into the proper book, in the proper place, and duly certified as recorded, which would doubtless have been held by the court at that time, to have been sufficient.

We are all agreed that the proper office of the index is, what its name imports, *to point to the record*, but that it constitutes no part of the record; and we must consequently hold, that the plaintiff's mortgage became an incumbrance upon the land from the time it

was transcribed upon the record, and that the defendant Lyman took his title subject to it.

The result is, that the decree of the court of chancery is to be affirmed, with directions to that court to fix upon a time for redemption and to carry this decree into effect.