## Almond Haner v. Wendall Bruce, David M. Fosgate, Gloria Fosgate and Peoples Trust Co. of St. Albans

[499 A.2d 792]

No. 84-319

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed September 6, 1985

*Brown, Cahill & Gawne*, St. Albans, for Plaintiff-Appellant.

**Gibson, J.** The question raised by this appeal is whether a real estate attachment that is misindexed by the city clerk is valid against a subsequent bona fide purchaser who had no actual notice of the attachment. The trial court dismissed the attaching party's claim. We reverse and remand.

On March 23, 1979, having obtained a writ of attachment in a pending suit against defendant Wendall Bruce, plaintiff filed the attachment with the St. Albans city clerk. At that time, a recorded land contract gave Bruce the right to purchase property at 58-60 Fairfield Street in St. Albans. Although the city clerk recorded and indexed the attachment in an "attachment book," she did not index it in the general index of land records, as required

by 24 V.S.A. § 1161. The record does not disclose whether the "attachment book" was the volume in which attachments of personalty only are to be recorded pursuant to 24 V.S.A. § 1163, or a different volume.

On May 29, 1979, Bruce purchased the Fairfield Street property, and one day later, he conveyed the property by warranty deed to defendants David and Gloria Fosgate, whose purchase was financed by defendant-mortgagee Peoples Trust Company of St. Albans. In early 1982, plaintiff obtained a final judgment in his suit against Bruce, which he duly filed and recorded with the city clerk.

It is not disputed that the title search conducted for defendants Fosgate and Peoples Trust in preparation for their purchase did not disclose the misindexed writ of attachment; it is also undisputed that they did not learn of the attachment until May 1982.

Recognizing defendants as bona fide purchasers without notice of the misindexed attachment, and observing that prospective real estate purchasers should not be required to search personal property records, the trial court dismissed plaintiff's claim, with prejudice, on the authority of *Burchard, Wilson & Co.* v. *Town of Fair Haven*, 48 Vt. 327 (1875). In that case, a writ of attachment was left at the town clerk's office for recording, but the writ was lost or removed before the town clerk could either record or index it; this Court held that no lien had been established against subsequent bona fide purchasers who had no notice of the attachment.

Subsequent to *Burchard*, this Court was presented with a slightly different case. In *Barrett* v. *Prentiss*, 57 Vt. 297, 300 (1884), a mortgage deed was duly recorded but not indexed, despite a statute, R.L. § 2680 (now 24 V.S.A. § 1161), that required the town clerk to keep a general index. Thereafter, a second mortgage was executed and assigned to a person who purchased it without actual knowledge of the first mortgage. Under these facts, the Court held that the first mortgage was superior to the second and could be foreclosed. The Court in *Barrett* followed *Curtis* v. *Lyman*, 24 Vt. 338 (1849), a case decided before the enactment of the indexing statute. *Curtis* also had held that the clerk's failure to index a mortgage did not invalidate the effect of its recordation. In a more recent case, *Hunn* v. *Koerber*, 129 Vt. 490, 282 A.2d 831 (1971), this Court ruled that an attaching creditor had

standing to defend a mortgage foreclosure action although the town clerk had failed to record the attachment. The Court stated:

> The attachment was effected when the officer lodged the copy of the writ, with the endorsement of his return, in the office of the town clerk. The actual recording of the entries respecting the writ was the duty of the town clerk, but such record, or the want of it, does not constitute any part of the attachment itself. The defendant's lien is unaffected by the neglect of the town clerk to enter it in the town records.

*Id.* at 493, 282 A.2d at 833. Thus, for over a century, it has been the law of Vermont that the proper recording of an instrument has served as constructive notice to the public, notwithstanding clerical errors in indexing.

An early Vermont statute, enacted in 1823, imposed a duty on the officer serving the writ "to cause to be recorded by the town clerk, in a book to be kept for that purpose, the substantial part of the writ . . . ." *Braley* v. *French*, 28 Vt. 546, 550 (1856). No constructive notice of an attachment was given "unless the substance of the writ was recorded," and it was the officer's duty to see that it was recorded. *Id.* at 550-51. The law was changed in 1839 when the legislature removed the provision that imposed a duty on the officer to cause the attachment to be recorded. Thereafter, there was "nothing required of the officer, in order to create a lien, by attachment, on real estate, but to leave a copy of the writ, with his return, with the town clerk . . . ." *Id.* at 551. The conclusion drawn by this Court was that "it was not the intention of the legislature to make [the] entry by the town clerk essential for the purpose of creating a lien . . . ." *Id.* The legislature has never reenacted the provisions of the 1823 statute; rather, the language of the present-day version (12 V.S.A. § 3292) is virtually the same as that of the 1839 act.

■ Although the result reached by Vermont (and most other states) has been criticized, e.g., 4 A. Casner, American Law of Property § 17.25, at 604-05 (1952), "the rule appears to be well established that in the absence of statutory provision to that effect, an index is not an essential part of the record." *Id.* at 604 (footnote omitted, citing, inter alia, *Barrett, supra*).

Similarly, under Vermont's system for the recording of security interests, the filer "does not bear the risk that the filing officer will not properly perform his duties . . . ." 9A V.S.A. § 9-407,

Comment 1; see also 9A V.S.A. § 9-403(1) (presentation constitutes filing); 1A P. Coogan, W. Hogan, D. Vagts & J. McDonnell, Secured Transactions Under the Uniform Commercial Code § 6C.05[2][e], at 6C-63 (1985) ("facilitation interest" of filer preferred over "disclosure interest").

The recently developed Uniform Simplification of Land Transfers Act (not as yet enacted in Vermont) gives priority to the attaching party when his interests conflict with those of subsequent purchasers. Although the Uniform Act imposes responsibility upon a filer to provide detailed indexing information, and makes indexing an essential part of recordation, the filer need not undertake to verify the correctness of indexation after the recording officer has accepted a properly completed submission. See Uniform Simplification of Land Transfers Act §§ 2-302 to 2-304, 3-202(b), 14 U.L.A. 234-37, 244-45 (1980).

As between the parties, the filer can not be held to be more blameworthy than the title searcher. Although the filer could return to the clerk's office to make certain that the instrument was properly recorded, he should not have to do so; he should be entitled to rely on the clerk to do his or her job in a proper manner. Further, a requirement that the filer double-check the clerk would be impractical—the clerk might not complete the recording and indexing promptly, for one reason or another, forcing the filer to make one or more additional visits to the clerk's office, to the inconvenience and annoyance of both individuals. An out-of-state filer would be particularly disadvantaged by such a requirement. The title searcher, on the other hand, is in a position to protect himself by simply asking the clerk about search procedures and whether there are particular volumes or indexing records he or she should check.

The trial court's dismissal of plaintiff's claim was erroneous.

*Reversed and remanded.*

**Allen, C.J.,** dissenting. I disagree with the result reached by the majority. A purchaser of real estate for value without actual or constructive notice of any defect in the title will hold the same against a prior grantee or attaching creditor who has failed to have his conveyance recorded, whether through his fault or that of the town clerk. *Burchard, Wilson & Co.* v. *Town of Fair Haven,* 48 Vt. 327 (1875). This is so because purchasers have the

implicit right to rely upon the land records required by law to be kept for that purpose. *Id.* at 335.

One of the land records required by law to be kept is a general index of transactions affecting title to real estate which shall include "every deed, conveyance, mortgage, lease or other instrument affecting the title to real estate, and each writ of attachment." 24 V.S.A. § 1161. An earlier version of this statute was first enacted in 1858, arguably to correct the mischief created by the holding in *Curtis* v. *Lyman,* 24 Vt. 338 (decided in 1849 and published in 1852), and followed in *Barrett* v. *Prentiss,* 57 Vt. 297 (1884).

At the time of the events described in *Curtis, supra,* the clerk was required to maintain an index to a particular book in that book. (This requirement still exists. 24 V.S.A. § 1154(b)). The Court in *Curtis* stated that the purpose of this act was to point out the duty of the clerk to not only make a paper record of conveyances, but also to furnish "facilities for their discovery, examination and use by all persons interested in them." *Id.* at 340. The *Curtis* Court concluded that there were "many practical difficulties in the way of making an index to the record an essential requisite to the validity of the title," and further, that if this were done, it would open the way for "a serious and embarrassing course of litigation" to determine what would constitute a sufficient index. *Id.* at 341. The legislature promptly addressed a majority of the concerns expressed by the Court in *Curtis* and actually set out the form for the general index as well as specifically describing the method for entering and keeping the names of the grantors and grantees. 1858, No. 21. This statute has since been amended to prescribe in even greater detail the mechanics for indexing land transactions.

Our recording acts were passed for the purpose of providing a method by which an intending purchaser or encumbrancer might safely ascertain the condition of title. An integral part of the recording scheme for real property is the general index.

There may have been a time in our early history when it would have been reasonably possible to examine all of the pages of all of the volumes of land records in a clerk's office to determine the true state of title. Today, there are in some communities hundreds of volumes of recorded materials relating to land transactions. The task of examining the necessary number of volumes to accurately determine the state of title under the majority holding

is unduly burdensome. It was the legislative intent to avoid this necessity that led to the requirement of a general index.

It is here agreed that the parties were equally blameless for the error that led to this action, and it may be that an inquiry to the clerk might here have disclosed the location of the attachment. A like inquiry to a clerk or successor clerk would, in all probability, be fruitless in the case of a misplaced or misfiled document. The filer knows of its existence and has the opportunity to make certain that it is properly indexed. The filer should suffer the consequences of improper indexing as he is usually the only one who can make certain that it is done right. *Compiano* v. *Jones*, 269 N.W.2d 459, 462 (Iowa 1978). As was stated in *Prouty* v. *Marshall*, 225 Pa. 570, 576-77, 74 A. 550, 552 (1909):

> If from any cause she fell short of giving legal notice [i.e., by recording and indexing], the consequence must fall upon her. She cannot hide behind the mistake of the recorder. It is an easy matter for a mortgagee, or a grantee in each particular instance, either in person, or by a representative, to look at the record, and see that the instrument has been properly entered.

The dictates of convenience and certainty require that one be able to rely on the general index.

The unreasoned one paragraph holding in *Barrett* has created a general disclaimer for misindexing in certificates of title by the signers of those instruments. The resulting and potentially highly damaging exposure to subsequent innocent purchasers ought to be avoided. This can best be accomplished under our present recording scheme by the simple requirement that one recording an instrument affecting the title to real estate make certain that the instrument is properly indexed.

I am authorized to state that Justice Peck joins in this dissent.