2007 VT 110

## Jeffrey W. Lively and Rebecca L. Lively v. Northfield Savings Bank, Kenneth Bayley d/b/a Prime Choice Builders and Mortgage Electronic Registration Systems, Inc.

[940 A.2d 700]

No. 07-165

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed October 5, 2007

*William L. Durrell* of *Benjamin, Bookchin & Durrell, P.C.*, Montpelier, for Plaintiffs-Appellants.

*Chad V. Bonanni* of *Bergeron, Paradis & Fitzpatrick, LLP*, Essex Junction, for Defendant-Appellee Mortgage Electronic Registration Systems, Inc.

¶ 1. **Dooley, J.** In this judgment-lien-foreclosure action, the plaintiffs, Jeffrey and Rebecca Lively, challenge a decision of the

superior court, granting summary judgment to defendant, Mortgage Electronic Registration Systems, Inc. (MERS). The court concluded that plaintiffs had failed to perfect their judgment lien against debtor, Kenneth Bayley, because the court issuing the judgment misspelled debtor's surname and failed to include in the judgment order the date on which the judgment became final. The superior court also determined that, even if the judgment lien was enforceable against debtor's property, the lien was junior to defendant's security interest, because at the time the judgment was recorded, debtor and his former wife held the property at issue as tenants by the entirety. Because we conclude that the misspelling of debtor's name was fatal to the enforcement of the judgment lien, we affirm.

¶ 2. The material facts of this case are not disputed. Plaintiffs' troubles began when they recorded in the land records of the Town of Fayston an arbitration judgment granted to them by the Washington Superior Court against the debtor, Kenneth Bayley, who owned a house in Fayston, Vermont with his then wife. The order drafted by the court did not contain either the date the judgment became final or the correct spelling of Mr. Bayley's name, which appeared in the document as "Bailey." The Livelys failed to notice these errors, and they recorded the judgment with the misspelled name in September of 2005. The town clerk indexed the judgment under the spelling of debtor's name, "Bailey," that was contained in the order.

¶ 3. The following May, debtor refinanced his residence in Fayston. As part of a divorce settlement, debtor received the property interest his wife held as a tenant by the entirety in return for the proceeds of this refinancing. At the same time that defendant's wife recorded a quitclaim deed memorializing this transaction, defendant executed a mortgage in favor of defendant, Northfield Savings Bank (NSB). In turn, NSB assigned the mortgage to MERS. Before NSB recorded the mortgage, its attorney performed a title search and found no liens or judgment orders indexed under the name "Kenneth Bayley." Thereafter, both the mortgage and the assignment agreements were duly recorded in the Fayston land records.

¶ 4. In June of 2006, plaintiffs filed an action to foreclose the judgment lien they held against the debtor's Fayston residence. The action alleged that the interest of MERS was inferior to that of plaintiffs. After plaintiffs moved for summary judgment, MERS

then filed a cross-motion for summary judgment, arguing that plaintiffs' judgment lien was fatally defective because: (1) debtor's name was misspelled in the judgment order; or (2) the order was not recorded as required for record notice, because it did not contain the date on which the judgment became final, 12 V.S.A. § 2904. In the alternative, MERS argued that even if the court concluded that an enforceable lien was created, the resulting lien would be junior to the security interest held by MERS, because debtor and his wife held the property at issue as tenants by the entirety. In a terse entry order, the trial court granted MERS summary judgment on each of these three grounds. This appeal followed.

¶ 5. We review a grant of summary judgment de novo. *Town of Lunenburg v. Supervisor & Bd. of Governors of Unorganized Towns & Gores of Essex County*, 2006 VT 71, ¶ 6, 180 Vt. 578, 908 A.2d 424 (mem.). We will affirm a grant of summary judgment when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *Zukatis v. Perry*, 165 Vt. 298, 300, 682 A.2d 964, 965 (1996). When both parties seek summary judgment, each must be given the benefit of all reasonable doubts and inferences when the opposing party's motion is being evaluated. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990). We conduct a plenary, nondeferential review of the questions of law presented by the summary judgment motion. *Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co.*, 2004 VT 124, ¶ 14, 177 Vt. 421, 869 A.2d 82.

¶ 6. Plaintiffs' primary contention on appeal is that the common-law doctrine of *idem sonans* excuses what would otherwise be a fatal misspelling of debtor's name. The phrase *"idem sonans"* means "of the same sound," and the related doctrine suggests that mistakes in spelling should be considered immaterial if both the correct and the incorrect spellings have the same sound and if the record and the judgment together point out with certainty the person and the subject matter to be bound. See 5 R. Powell, Powell on Real Property § 38.04[3] (2002). In particular, the doctrine has been applied when the names of otherwise clearly identified parties, objects, or places are misspelled in civil or criminal proceedings. See, e.g., *Purifoy v. State*, 822 S.W.2d 374, 379 (Ark. 1991) (applying *idem sonans* and concluding that a misspelling of murder victim's name is not fatal to indictment);

*Edmonds v. Andrews*, 696 P.2d 325, 325 (Colo. 1985) (applying *idem sonans* and determining that misspelling of otherwise identified defendant's name was not fatal to rendition order).

■ ¶ 7. We agree with plaintiffs that this Court has "long recognized" the doctrine of *idem sonans*. See, e.g., *State v. Wheeler*, 35 Vt. 261, 263 (1862) (misspelling of defendant's name was not fatal to indictment); *McMahan v. Green*, 34 Vt. 69, 70-71 (1861) (same). We do not agree, however, that our *idem sonans* jurisprudence justifies the application of the doctrine to the facts of this case. As the New Hampshire Supreme Court noted, the issue of whether it is appropriate to apply the doctrine "boils down to a question of notice." *Brady v. Mullen*, 649 A.2d 47, 49 (N.H. 1994). When all of the parties to an action can plainly identify the person, place, or thing at issue, the misspelling of a name cannot be said to deprive those parties of notice. See *id.*

■ ¶ 8. A final judgment in a civil action becomes a lien "on any real property of a judgment debtor if recorded" in the town clerk's office of the town in which real property of the debtor is located. 12 V.S.A. §§ 2901, 2904. The town clerk must record the certified copy of the judgment "in the land records." *Id.* § 2904. In order for persons to be able to search documents recorded in the land records, the town clerk must keep a general index of such documents, 24 V.S.A. § 1161(a), as well as an index of each volume. *Id.* § 1154(d). For natural persons, "the name shall be indexed under the first letter of such person's surname." *Id.* § 1161(a). As the New Hampshire Supreme Court observed in *Brady*, "[t]he key to proper notice, in this index context, is the proper spelling of the [debtor's] name and the resulting proper alphabetical placement." 649 A.2d at 49-50. Applying *idem sonans* to a name index would defeat the purpose of the index.

¶ 9. The majority of other courts that have recently considered the same issue have come to the same conclusion with respect to the application of *idem sonans* to name-index searches. See *Orr v. Byers*, 244 Cal. Rptr. 13, 16-17 (Ct. App. 1988); *Waicker v. Banegura*, 745 A.2d 419, 432-33 (Md. 2000); *National Packaging Corp. v. Belmont*, 547 N.E.2d 373, 376 (Ohio Ct. App. 1988). We are persuaded by the reasoning of these decisions as it applies to surnames that must be searched in name indices. If we applied the doctrine in the context of this case, we would effectively require index searchers to think of every possible spelling of a

surname. In addition to being time-intensive and "financially prohibitive," *id.*, plaintiffs' construction would be an unfair burden on index searchers, particularly in relation to the filer, who need only check that the name on the document being filed is accurate. We agree with the *Belmont* court that it is enough to require index searchers to make a diligent, thorough inquiry. We should not expect them to do the work of "poets, phonetic linguists, or multilingual specialists." *Id.*

¶ 10. We recognize that there may be instances where *idem sonans* may be applicable to first and middle names when surnames match, as well as in instances where combinations of first and middle names and initials are used differently. See, e.g., *Franklin Bank v. Bowling*, 74 P.3d 308, 314-15 (Colo. 2003) (title searcher was on constructive notice of judgment lien filed against "Grady Merritt" even though search was for liens against "T. Grady Merritt," where Grady was debtor's middle name). We take no position on those circumstances.

¶ 11. Plaintiffs' reliance on this Court's decision in *Haner v. Bruce*, 146 Vt. 262, 499 A.2d 792 (1985), in arguing against this result is misplaced. In *Haner*, plaintiffs presented an error-free copy of the relevant attachment writ to the town clerk, who subsequently misfiled the order. Finding in plaintiffs' favor, we based our holding on two main considerations. First, we concluded that "the filer need not undertake to verify the correctness of indexation *after the recording officer has accepted a properly completed submission." Id.* at 265, 499 A.2d at 794 (emphasis added). Second, we reasoned that it would be impractical to require that the filer double-check to make sure that the clerk has not made an error. *Id.* The index-searcher, we noted, was in a better position to discover errors made by the filing clerk than would be the filer. *Id.*

¶ 12. Contrary to plaintiffs' suggestion, *Haner* is plainly distinguishable from this case in two significant respects. Unlike the plaintiffs in *Haner*, the Livelys did not present a properly completed submission to the town clerk. Indeed, the language of *Haner* suggests that, before an order is submitted to the town clerk, the filer must "undertake to verify the correctness of indexation." *Id.* As we noted, it would be impractical in this case to require the index searcher to identify every possible alternative spelling of debtor's surname. The practical considerations that guided our judgment in *Haner* disfavor plaintiffs here.

¶ 13. We are not unsympathetic to plaintiffs, who, by all accounts, received a defective judgment order from the Washington Superior Court through no fault of their own. However, in filing the order as a lien, plaintiffs had the opportunity and responsibility to identify and correct the misspelling of the debtor's last name. Nor, as we have explained, does plaintiffs' plight justify an application of *idem sonans* to a name-index search. Because we determine that the misspelling of debtor's last name rendered plaintiffs' judgment lien unenforceable, we need not address the other grounds on which the trial court granted summary judgment.

*Affirmed.*