[No. G003286. Fourth Dist., Div. Three. Feb. 16, 1988.]

CHRISTINA ORR, as Administratrix, etc., Plaintiff and Appellant, v. RICK BYERS et al., Defendants and Respondents.

**COUNSEL**

Breidenbach, Swainston, Crispo & Way, Robie & Matthai, James R. Robie, Michael J. O'Neill and Maria Louise Cousineau for Plaintiff and Appellant.

Alan A. Knox, Levinson & Lieberman, Burton S. Levinson, Lawrence R. Lieberman and Steven Ray Garcia for Defendants and Respondents.

**OPINION**

**SONENSHINE, J.**—The question presented in this appeal is whether an abstract of judgment containing a misspelled name imparts constructive notice of its contents under the doctrine of *idem sonans.* We conclude it does not and, accordingly, affirm the trial court's ruling.

I.

The facts are not in dispute. In October 1978, James Orr obtained a judgment in excess of $50,000 against William Elliott. The written judgment prepared by Orr's attorney identified Elliott erroneously as "William Duane Elliot." The following month, an abstract of judgment was recorded in the Orange County Recorder's office, this time identifying Elliott both as "William Duane Elliot" and "William Duane Eliot." Consequently, the abstract was listed in the Orange County Combined Grantor-Grantee Index under those names only.

Elliott thereafter obtained title to a parcel of property which became subject to Orr's judgment lien. But when Elliott sold that property to Rick

Byers in July 1979, a title search failed to disclose the abstract of judgment. As a result, the preliminary title report did not identify Orr's judgment lien against Elliott, and the judgment was not satisfied from the proceeds of Elliott's sale to Byers.

In February 1981, Orr filed an action against Byers, Elliott, Pomona First Federal Savings & Loan Association and Imperial Bank[1] seeking a declaration of the rights and duties of all parties. Essentially, he was requesting judicial foreclosure of his judgment lien.

At the June 1985 trial, Orr[2] argued the defendants had constructive notice of the abstract of judgment through application of the doctrine of *idem sonans.*[3] The trial judge acknowledged the doctrine's existence, but he concluded it was inapplicable and announced his intended decision to deny Orr's request for declaratory relief. A formal judgment was filed February 21, 1986,[4] and this appeal followed.[5]

---

[1] As part of the transaction, Byers borrowed $120,000 from Pomona First Federal which held a first trust deed on the property. Byers thereafter obtained a line of credit with Imperial Bank and delivered to Imperial a trust deed encumbering the property. Imperial ultimately acquired the property through foreclosure proceedings.

[2] James Orr died in 1983, two years after the lawsuit was filed. Christina Orr, his widow, was appointed administratrix of his estate and was permitted, pursuant to the parties' stipulation, to substitute as the plaintiff in this action.

For purposes of clarity, however, we preserve the use of Orr's name in referring to the plaintiff/appellant.

[3] In January 1985, the court denied the defendants' motion for summary judgment, finding "the threshold issue is the viability of the doctrine of idem sonans. The court has been cited no California case which overrules the doctrine; it is recognized and applied in the cases where the issue has been raised. [¶] In the instant case there is a viable issue as to whether moving parties herein had constructive notice of the judgment lien."

Three months later, the plaintiff's motion for summary judgment was denied, the court noting: "The plaintiff's primary argument is that inasmuch as this court has held that the doctrine of idem sonans is still viable, by application of that doctrine defendants had constructive notice of a judgment lien recorded with an incorrect spelling. Plaintiff seeks a declaration of negligence and the threshold question is whether defendants owed a legal duty to plaintiff herein. While the determination of duty is primarily a question of law, the foreseeability of risk, which is a primary consideration in establishing the element of duty, is a question of fact [citations] and dependent in part upon public policy considerations. Such considerations have been raised by both plaintiff and defendants and a resolution of those questions is properly for the trier of fact."

[4] Orr's notice of appeal, stating he was appealing the "rendition of judgment on June 19, 1985 in favor of defendants," was filed September 30, 1985, and was therefore premature.

Pursuant to rule 2(c) of the California Rules of Court, however, we treat the notice "as filed immediately after entry of the judgment."

[5] Respondents inform us the appellant in this case is actually the law firm which prepared the erroneous abstract of judgment. Apparently, Christina Orr's malpractice action against that firm was settled prior to trial of this case, with Orr's cause of action against Byers being assigned to the law firm in exchange for payment of a sum equal to the amount of the judgment lien.

## II.

■ Orr takes the position his attorney did not *misspell* Elliott's name on the abstract but rather, used *alternative spellings* of the same name.[6] And, he argues, it is imperative that a title searcher be charged with knowledge of such alternative spellings under the established doctrine of *idem sonans.*

■ "The doctrine of idem sonans is that though a person's name has been inaccurately written, the identity of such person will be presumed from the similarity of sounds between the correct pronunciation and the pronunciation as written. Therefore, absolute accuracy in spelling names is not required in legal proceedings, and if the pronunciations are practically alike, the rule of idem sonans is applicable." (46 Cal.Jur.3d, Names, § 4, p. 110, fns. omitted; see also *Napa State Hospital* v. *Dasso* (1908) 153 Cal. 698, 701 [96 P. 355].) The rule is inapplicable, however, under circumstances "where the written name is material." (*Emeric* v. *Alvarado* (1891) 90 Cal. 444, 466 [27 P. 356].) "[T]o be material, [a variance] must be such as has misled the opposite party to his prejudice." (Black's Law Dict. (5th ed. 1979) p. 671.)

■ Orr insists all that is required to invoke the doctrine is a similarity in pronunciation; thus, the trial court erred in refusing to do so here. We cannot agree. There is no question the names Eliot, Elliot and Elliott are *idem sonans.* But we refuse to extend the doctrine's application in the manner urged.

In virtually all of the cases cited by Orr, the doctrine was applied solely to establish sameness of identity. (See, e.g., *Kriste* v. *International Sav. etc. Bk.* (1911) 17 Cal.App. 301 [119 P. 666], *Galliano* v. *Kilfoy* (1892) 94 Cal. 86 [29 P. 416], *Hall* v. *Rice* (1884) 64 Cal. 443 [1 P. 891, 2 P. 889].)[7] Furthermore, and contrary to Orr's assertion, the rule does not have "widespread application" in the area of real property law. Simply stated, the doctrine of *idem sonans* remains viable for purposes of identification. But it has not, to our knowledge, been applied in this state to give constructive notice to good faith purchasers for value.

Orr's reliance on *Flora* v. *Hankins* (1928) 204 Cal. 351 [268 P. 331], a case involving an action to foreclose a mechanic's lien, is misplaced. In that

---

[6] Curiously, the statement of facts in Orr's trial brief asserts: "The case begins with multiple spelling errors on an abstract of judgment . . . ."

[7] Not all references to the doctrine predate World War I! The rule was cited recently in *People* v. *Mendoza* (1986) 183 Cal.App.3d 390, 401 [228 Cal.Rptr. 308]: "And, although here found irrelevant, the spelling of Mendoza's middle name as to one of the prior convictions, as Contre*rr*as with two 'r's,' with obviously the same pronunciation, is manifestly immaterial under the rule of '*idem sonans*.' [Citations.]"

case, the lien contained the name "Robert Hankins," while in the builder's contract underlying the lien, the individual's name appeared as "Hankines." The court rejected the defendant's contention the claimed lien did not comply with the requirements of former section 1187 of the Code of Civil Procedure, stating "[i]t requires no citation of authority . . . to uphold the view that the rule of *idem sonans* applies to such a case." (*Id.,* at p. 353.) But in that case, the lien itself contained the correct spelling; here, neither the judgment nor the abstract was accurate. More importantly, the issue there was whether the spelling error was an immaterial variance constituting compliance with the identification requirements of former section 1187.

Nor are we impressed with the reasoning behind the decision in *Green* v. *Meyers* (1903) 98 Mo.App. 438 [72 S.W. 128], a case Orr urges us to follow. In *Green,* a purchaser of property from an individual named Eleanor G. Sibert was charged with notice of a judgment against Sibert appearing in the judgment abstract as entered against E. G. Seibert. The appellate court concluded: "The names Seibert and Sibert are not only idem sonans—they not only sound the same in utterance—but they are, practically, the same name. Therefore, no matter which way it may be spelled by the party . . . , or by the recording officer, it is notice. It is common knowledge that proper names are spelled in a variety of ways, and everybody is presumed to have such knowledge. Thus, 'Reed,' 'Reid,' and 'Read,' are different ways of spelling one name. Manifestly, the record of a judgment against 'Reed' is notice to a subsequent purchaser from the same man signing the deed as 'Reid.' 'Persons searching the judgment docket for liens ought to know the different forms in which the same name may be spelled, and to make their searches accordingly, unless, indeed, the spelling is so entirely unusual that a person cannot be expected to think of it.' [Citation.]" (*Id.,* at p. 129.)

The *Green* court recognized "[s]ome confusion has arisen in the authorities as to whether the rule as to idem sonans applies to records. It is said that the law of notice by record is addressed to the eye and not the ear, and that therefore the rule cannot apply to records. It is true that record notice is principally a matter of sight and not sound. Yet it is, above all, a matter for the consideration of the mind, and if the record of a name spelled in one way should directly suggest to the ordinary mind that it is also commonly spelled another way, the searcher should be charged with whatever the record showed in some other spelling under the same capital letter. It is not necessary to decide here whether this would be carried out to the extent of holding that the searcher for information in the record should look under some other capital for another mode of finding the same name, as, for instance, 'Kane' and 'Cain,' 'Phelps' and 'Felps,' etc. But that the rule of

idem sonans has been applied to records has been too often accepted by the supreme court of this state for us to question it. [Citations.]" (*Ibid.*)

Respondents make no effort to distinguish *Green.* They simply caution us not to be swayed by cases from other jurisdictions, in light of our high court's pronouncement in *Henderson* v. *De Turk* (1912) 164 Cal. 296 [128 P. 747].

In *Henderson,* the court refused to apply the doctrine to a tax deed which was void for erroneously reciting the name of the individual assessed as "E. W. Davies" instead of "E. W. Davis." The court adhered to the ruling in *Emeric* v. *Alvarado, supra,* 90 Cal. 444, 465 where "the assessment was to 'Castero,' while the owner's name was 'Castro.' The court said: 'It is not a case to which the rule of *idem sonans* applies. Tax proceedings are *in invitum,* and, to be valid, must closely follow the statute, and *idem sonans* applies to cases of pleas of misnomer and issues of identity, where the question is whether the change of letters alters the sound—not to assessments and other cases of description, where the written name is material.' . . . *While there is a diversity of opinion in other jurisdictions on this point, we think this ruling [Emeric v. Alvarado] should be followed in this state.*" (*Henderson* v. *De Turk, supra,* 164 Cal. at pp. 298-299, italics added.)

In our view, the case at bar presents a situation where the written name is material. We therefore decline to follow *Green's* holding which, in essence, dispenses with the formalities of record notice. Moreover, the *Green* opinion entirely ignores the added burden placed on the searcher who is charged with knowledge of the alternative spellings.

In refusing to apply the doctrine here, the trial judge found that requiring a title searcher to comb the records for other spellings of the same name would place an undue burden on the transfer of property.[8] The court observed "if you put the burden on those people in addition to what comes up when the name is properly spelled, to track down and satisfy themselves

---

[8] Orr asserts he "is not suggesting that a search for each and every possible misspelling of a name be undertaken." Rather, he contends "when a name consists of a double consonant (especially a name which is regularly spelled with either single or double consonants without phonetic dissimilarity, like Elliott), it is reasonable to require and simple for the searcher to look for listings under these variations in spelling."

At oral argument, Orr's attorney displayed a local telephone directory which he brought to illustrate his position the practice of searching for alternative spellings is commonplace today. Indeed, the following notations appear in the November 1987 edition of the Pacific Bell White Pages for Orange County Central & North: (1) directly above the listings for "Eliot," are the words "See Also-Elliot-Elliott," (2) preceding the listings for "Elliot," appear the words "See Also-Eliot-Elliott," and (3) before the name "Elliott," the reader is instructed to "See Also-Eliot-Elliot."

about whatever comes up when the name is improperly spelled in all different ways that it might be improperly spelled, it leads to, I think, an unjustifiable burden." We agree.

Indeed, not every name disclosed by a search corresponds to the individual who is subject to the lien. Thus, if a search uncovered alternative spellings of the same name, the searcher would be required to locate every lien against every individual with a name similar to the one being searched and determine whether that lien impacted the transaction under consideration.

We reject Orr's contention "modern technology has provided a solution to the burden at relative inexpense to the title industry." He advocates use of a system known as Soundex whereby each last name is reduced to a code consisting of a letter and a three digit number. He argues use of that system here would have revealed all three spelling variations.

Testimony at trial disclosed the Soundex system is presently utilized by two title companies in the area, and that the doctrine of *idem sonans* "is one of the reasons why some companies use [that] system." But the same witness also told of a drawback to its use: According to Donald Henley, a developer of software and computer systems for the title insurance industry, "the problem with Soundex is that you may get a lot of extraneous names if it is computer generated. And the task of going through all these names and determining which name affects your search, you know, can be lengthy if it is a popular name in a large county."

We conclude the burden is properly on the judgment creditor to take appropriate action to ensure the judgment lien will be satisfied. The procedure is simple enough. In fact, " '[t]he judgment lien is one of the simplest and most effective means by which a judgment creditor may seek to secure payment of the judgment and establish a priority over other judgment creditors.' " (8 Witkin, Cal. Procedure (3d ed. 1986) Enforcement of Judgment, § 62, p. 77, quoting from 16 Cal. Law Revision Com. Rep., p. 1041.) Indeed, to rule otherwise is to grant the judgment creditor a "free ride."

As respondents succinctly state, Orr asks us "to change the law of constructive notice to accommodate [his] error in such a way that future title searches will be required to be performed only by trained individuals with elaborate and expensive equipment at their disposal or else to go uninsured in a world where prudence demands title insurance. Neither result is satisfactory, especially considering that the simple alternative is to require

[judgment creditors] simply to spell the names of their judgment debtors properly."[9]

Judgment affirmed. Respondents to receive costs.

Wallin, Acting P. J., and Crosby, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 4, 1988.

---

[9] Orr's reliance on *Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, modified 191 Cal.App.3d 631a [237 Cal.Rptr. 282], is inapt.

In *Seeley,* a title company was held liable for the negligent recordation of a nonrecordable document. Here, the title company, as a result of two successful demurrers prior to trial, was removed as a defendant. Moreover, the title company played no role in recording the erroneous abstract of judgment.