Hillsborough-northern judicial district
No. 93-806

THOMAS BRADY, TRUSTEE OF D.T.B., 172 GLENWOOD AVENUE, MANCHESTER, N.H. REAL ESTATE TRUST

v.

WILLIAM G., JR., AND PEGGY K. MULLEN

October 21, 1994

68

*McDowell and Mekeel, P.A.,* of Manchester (*Joseph F. McDowell III* and *Mark D. Morrissette* on the brief, and *Mr. Morrissette* orally), for the plaintiff.

*Orr & Reno, P.A.,* of Concord (*R. James Steiner* on the brief and orally), for the defendants.

THAYER, J.  The plaintiff, Thomas Brady, as trustee of D.T.B., 172 Glenwood Avenue, Manchester, N.H. Real Estate Trust, appeals the Superior Court's (*Sullivan,* J.) order denying his petition in equity for declaratory relief, a petition upon which the Superior Court (*Groff,* J.) had previously issued a decree *pro confesso.* We affirm.

On September 14, 1984, David T. Brady recorded a $40,000 attachment against "Eric B. Welsh" in the Hillsborough County Registry of Deeds (1984 attachment). On September 25, 1984, Eric R. Welch sold certain real estate in Manchester for value to the defendants, William and Peggy Mullen. After recovering judgment against "Eric B. Welsh" in July 1986, Brady notified the defendants of his claim against their property pursuant to the 1984 attachment. The defendants, maintaining that they lacked actual notice of the 1984 attachment when they purchased their property, refused to acknowledge Brady's claim.

In July 1989, Brady filed a petition in equity for declaratory judgment, seeking, *inter alia,* a ruling that he had a valid claim against the defendants' property pursuant to the 1984 attachment. Brady argued, under the legal doctrine of *idem sonans,* that the misspelling of Eric R. Welch's name in the writ of attachment did not render the 1984 attachment fatally defective because the misspelled name, when spoken, sounds similar to the actual name, and the law does not regard the spelling of names as much as it does their sound. The defendants appeared through counsel but filed no answer. In October 1990, Brady assigned his interest in this action to the plaintiff. In August 1993, the court issued a decree *pro confesso* pursuant to Superior Court Rule 131, taking as confessed all of the well-pleaded facts in the complaint. The court ruled that the *pro confesso* decree did not preclude the defendants, at a future hearing, from contesting the validity of the underlying legal doctrine of *idem sonans* or, in the alternative, from arguing that the otherwise valid legal doctrine is not applicable to the facts set forth in the complaint. After hearing, the court ruled that the confessed facts, together with the applicable law, failed to support a claim for relief.

On appeal, the plaintiff argues: (1) that the entry of a decree *pro confesso* admits a petitioner's claim for relief; and (2) that New Hampshire still adheres to the doctrine of *idem sonans* and that this doctrine applies to legal instruments recorded in the registry of deeds.

■ If a defendant fails to answer an equity petition within the prescribed time period, "the bill shall be taken pro confesso, and a decree entered accordingly." SUPER. CT. R. 131; *see also Kennedy v. Shaw,* 119 N.H. 99, 101, 398 A.2d 834, 836 (1979). The parties do not dispute that a decree *pro confesso* was warranted in this case, or that such a decree amounts to the admission of the plaintiff's well-pleaded allegations of fact. *See Kennedy,* 119 N.H. at 102, 398 A.2d at 836. Instead, the parties' disagreement centers on whether a decree *pro confesso* also takes as confessed the legal claim upon

which the plaintiff seeks relief. The plaintiff cites *Koch v. Randall,* 136 N.H. 500, 503, 618 A.2d 283, 285 (1992), for the proposition that a decree *pro confesso* "is the same as a default judgment in an action at law." Therefore, the plaintiff asserts, the entry of a decree *pro confesso* must necessarily preclude the defendants from challenging both well-pleaded factual allegations *and* conclusions of law contained in or derived from the petition for declaratory relief. *See* 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1096, at 66–67 (1984) (reciting items deemed admitted upon default in an action at law).

The plaintiff cites our decision in *Koch* out of context. We noted in *Koch* that the appellants had framed their argument by asserting that when an allegation is "a legal conclusion, not an allegation of fact, [it] is not taken as admitted in a *pro confesso* judgment." *Koch,* 136 N.H. at 503, 618 A.2d at 285. The issue we resolved in *Koch,* therefore, was not, as the plaintiff insists, whether legal conclusions are deemed admitted by a *pro confesso* decree, but rather whether "the facts alleged in the pleadings . . . and the testimony presented at the hearing form[ed] a sufficient basis to support the trial court's award." *Id.* In that context, we articulated the effect of a *pro confesso* decree by stating that "[a]s in the case of a default, a judgment *pro confesso* results in the admission of all material and well-pleaded allegations of fact." *Id.* Thus, *Koch* in no way stands for the proposition that a *pro confesso* decree admits conclusions of law.

Furthermore, in *Kennedy v. Shaw,* we specifically ruled that "[a]fter the final [*pro confesso*] decree, the only option left to the defendant [is] to except to the decree on the grounds that the allegations in the confessed bill failed to state a cause for relief." *Kennedy,* 119 N.H at 102, 398 A.2d at 836. The plaintiff urges us to reconsider our decision in *Kennedy,* arguing that, as in the case of a defaulting party at law, a party subject to an equity decree *pro confesso* necessarily admits liability and, therefore, should not subsequently be allowed to assert that a cause of action has not been stated. *See* 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1096, at 66–67 n.21. We disagree. The *Kennedy* opinion and the authorities cited therein regarding the effect of a *pro confesso* decree, *see Kennedy* 119 N.H at 102, 398 A.2d at 836–37 (citing *Collier v. Collier,* 145 So. 2d 821 (Ala. 1962); 27 AM. JUR. 2D *Equity* § 222 (1966)), do not discuss default judgments, and do not offer a basis for comparing, let alone equating, the various effects of a default judgment with those of a decree *pro confesso.*

■■ As opposed to the relative rigidity of a default judgment at law, "[t]he proceeding to frame an appropriate final decree in equity following the entry of [the equivalent of a decree *pro confesso*] is equitable in nature. It is governed by principles of equity and is addressed to the sound discretion of the trial court." *Alderfer v. Pendergraft,* 448 A.2d 601, 603 (Pa. Super. 1982). The United States Supreme Court long ago held that "a decree *pro confesso* is not a decree as of course according to the prayer of the bill, nor merely such as the complainant chooses to take it." *Thomson v. Wooster,* 114 U.S. 104, 113 (1885). In light of the equitable nature of the decree *pro confesso,* a defendant "is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree." *Central Railroad Co. v. Central Trust Co.,* 133 U.S. 83, 91 (1890); *see also Central Foundry Company v. Benderson,* 223 So. 2d 266, 268 (Ala. 1969); *Brashears v. Hartsook,* 450 S.W.2d 7, 9–10 (Tenn. 1969).

■ We hold that a decree *pro confesso* admits only material and well-pleaded allegations of fact. The trial court therefore properly ruled that the defendants were not precluded from contesting the validity of the underlying legal doctrine of *idem sonans* or from otherwise arguing that the legal doctrine is not applicable to the confessed facts of the complaint.

■ The phrase *idem sonans,* literally "of the same sound," refers, at common law, to two differently spelled names that have nearly indistinguishable pronunciations. 57 AM. JUR. 2D *Names* § 58 (1988). Generally, under the legal doctrine of *idem sonans,* a mistake or variance in the spelling of a party's name is immaterial to the disposition of a legal proceeding if both modes of spelling have the same sound. *Id.* Early New Hampshire case law recognized the doctrine of *idem sonans* in both the criminal and civil contexts, primarily to avoid invalidating relevant documents merely because they misspelled or varied the complete spelling of certain names. *See, e.g., State v. Perkins,* 70 N.H. 330, 47 A. 268 (1900) (birth record); *Hart v. Lindsey,* 17 N.H. 235 (1845) (military records); *Tibbets v. Kiah,* 2 N.H. 557 (1823) (deed). We have never addressed whether the doctrine of *idem sonans* applies to attachment liens recorded in the registry of deeds. We hold that it does not.

The ability of *idem sonans* to rescue an otherwise deficient document boils down to a question of notice. Put another way, does a document containing a discrepancy or variation in the spelling of a name still put the party against whom the document is to be

applied on adequate notice of the obligations or consequences flowing from it? At common law, a party typically invoked the doctrine of *idem sonans* to avoid the invalidation of a document, despite a variance in the spelling of a particular name in the document, when the document had already been exchanged between, or acknowledged by, people who knew each other. *See, e.g., Tibbets,* 2 N.H. at 557–58. Thus, in the typical case, the misspelling of a name that sounded like the actual name would not invalidate the document being contested because relevant parties would have been on notice of the document's existence or of pertinent conditions contained within it.

■ By contrast, application of the *idem sonans* doctrine to an attachment index search involves different considerations. The attachment index is alphabetically based, integrated into the general land records and absent any identifying context, other than the name of the person attached and the character of the filing. It is designed, primarily, to alert third parties to the existence of attachment or judgment liens on real estate that third parties propose to acquire. The key to proper notice, in this index context, is the proper spelling of the attachment defendant's name and the resulting proper alphabetical placement. The plaintiff would rely on the doctrine of *idem sonans* to support the constructive notice (or, more appropriately, to impute actual notice) to the defendants in this case. Such notice would negate the defendants' claim of status as *bona fide* purchasers and would have subjected them to plaintiff's judgment lien. *See Hawthorne Trust v. Maine Savings Bank,* 136 N.H. 533, 537, 618 A.2d 828, 831 (1992). We do not hold this to be a proper application of the doctrine of *idem sonans.*

■ The defendants cite authority from other jurisdictions that, in our view, perfectly illustrates the problem of applying the doctrine of *idem sonans* to names that are misspelled in attachment-lien indices:

> [W]e have experienced a tremendous growth in the population and the economy, and those developments have spawned countless real estate sales and a volume of litigation resulting in an abundance of indexed judgment liens . . . . To impose rigidly the doctrine of *idem sonans* to name indexes now maintained for judgment liens would tax all land abstractors beyond reasonable limits and require them to be poets, phonetic linguists, or multilingual specialists. The additional time necessary to

examine name indexes under such a stringent doctrine would make the examinations financially prohibitive.

*National Packaging Corp. v. Belmont,* 547 N.E.2d 373, 376 (Ohio Ct. App. 1988); *see also Orr v. Byers,* 244 Cal. Rptr. 13, 16–17 (Ct. App. 1988). We will not attenuate the judgment creditor's burden to take appropriate measures to ensure satisfaction of the attachment lien merely to accommodate the judgment creditor's spelling error. *See Orr,* 244 Cal. Rptr. at 17. We concur with the court in *Orr* that "the simple alternative is to require [attachment creditors] simply to spell the names of their . . . debtors properly." *Id.* (quotation and footnote omitted). Thus, title examiners, or the people for whom they conduct searches, are not charged with constructive notice of a lien when the only reference to that lien is a misspelled name in the attachment-lien index at the registry of deeds.

Because we hold that the doctrine of *idem sonans* does not apply to attachment-lien indices, we do not reach the issue of whether, in fact, the contested names are of the same sound.

*Affirmed.*

All concurred.