Filed 6/17/20; Modified and certified for pub. 7/14/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CARLOS ALBERTO VASQUEZ et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> LBS FINANCIAL CREDIT UNION, <br><br> Defendant and Appellant. | B292390 <br><br> (Los Angeles County Super. Ct. No. VC066086) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patrick T. Meyers, Judge. Affirmed.

Prenovost, Normandin, Dawe & Rocha, Karel Rocha and Jason Meyer for Defendant and Appellant.

Friedman Stroffe & Gerard and Richard W. Millar, Jr., for Plaintiffs and Respondents.

_____

Defendant LBS Financial Credit Union (LBS) appeals from a judgment entered after a court trial for Carlos and Libby Vasquez and mortgagee Brighten Lending (collectively, plaintiffs) in their action for quiet title and declaratory and injunctive relief regarding property the Vasquezes purchased in 2015 from Guillermo Guerrero and his wife. Seven years before the purchase, LBS obtained two money judgments against Guerrero and recorded abstracts of judgment (LBS abstracts) against Wilbert G. Guerrero, a name which does not appear in the chain of title for the property.

On appeal, LBS contends the trial court erred in finding the Vasquezes were bona fide purchasers, asserting the Vasquezes had constructive notice of the LBS abstracts based on Guerrero's use of different variations of his name on multiple title and sale documents, including one handwritten reference in the 10-page purchase agreement to the name Wilbert Guillermo Guerrero. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Events Leading to the Filing of This Lawsuit*

In 2015 Carlos and Libby Vasquez purchased real property located on Domo Street in Whittier (the Domo property) from Guillermo Guerrero and his wife, Laura Guerrero, for $435,000.[1] The Vasquezes made an $87,000 down payment and borrowed

---

[1]  Because Carlos and Libby Vasquez have the same last name, we refer to them by their first names. In light of the dispute as to Guillermo Guerrero's correct first name, we refer to him as Guerrero and to Laura Guerrero by her maiden name, Zaragoza.

2

the remainder from Brighten Lending. Brighten Lending recorded a deed of trust against the Domo property, securing a promissory note for $348,000.

On October 18, 2016 attorneys representing LBS contacted the Vasquezes, Brighten Lending, and their title insurance company, Old Republic Title Company, and advised them LBS held two judgment liens against the Domo property based on money judgments it obtained in 2008 against Guerrero, for which it recorded abstracts of judgment against "Wilbert G. Guerrero" with the Los Angeles County Registrar-Recorder (Registrar-Recorder). LBS demanded plaintiffs pay the full amount of Guerrero's judgment debt, $72,166.25, to avoid foreclosure proceedings.

On January 30, 2017 plaintiffs filed a complaint for quiet title and declaratory and injunctive relief, seeking a determination the Vasquezes owned the Domo property free and clear of LBS's judgment liens.

B.      *The Evidence at Trial*

A bench trial was held on November 14 and 15, 2018. Libby, Carlos, and Brighten Lending president Jessica Von testified for plaintiffs. Plaintiffs also called Kenneth Dzien as an expert witness on title search custom and practice to opine whether the Vasquezes were on constructive notice of LBS's liens through the Registrar-Recorder's indices. LBS called Alan Wallace as an expert on the same subject areas.

1.      *Title history of the Domo property*

On January 15, 1999 a grant deed was recorded reflecting conveyance of the Domo property from Rose Hodges to "Guillermo

Guerrero, a single man, and Laura Zaragoza, a single woman, as joint tenants." On April 19, 2004 a grant deed was recorded transferring the property to "Guilleromo Wilbert Guerrero and Laura Olivia Guerrero, husband and wife as joint tenants." The 2004 deed stated, "This conveyance confirms a change of name and the grantor and grantee are the same party." On October 30, 2015 a grant deed was recorded conveying the property from "Guillermo Guerrero and Laura Olivia Guerrero" to the Vasquezes.

### 2. *The LBS abstracts*

On May 8, 2008 LBS obtained an abstract of judgment for $19,680.35 in *LBS Financial Credit Union v. Wilbert G. Guerrero, et al.*, Superior Court of Los Angeles County, case No. 08C00396, identifying the judgment debtor as "Wilbert G. Guerrero" living at 844 E. Bonds Street in Carson. On June 2, 2008 LBS recorded the abstract of judgment. On August 1, 2008 LBS recorded a second abstract of judgment obtained in *LBS Financial Credit Union v. Wilbert G. Guerrero, et al.*, Superior Court of Los Angeles County, Case No. 08C00395, for $19,483.03, similarly identifying the judgment debtor as "Wilbert G. Guerrero" living at 844 E. Bonds Street in Carson. The record does not reflect any efforts by LBS to collect on the judgments prior to sending its October 2016 demand letter to plaintiffs.

### 3. *The Vasquezes' purchase of the Domo property*

On May 3, 2015 the Vasquezes, working with a real estate agent, made an offer to purchase the Domo property from the Guerreros for $435,000. On May 7 the Guerreros made a counteroffer to sell the property for $442,500, which the

4

Vasquezes accepted. The sale ultimately closed for $435,000 following the appraisal.

The parties executed a residential purchase agreement and joint escrow instructions using a California Association of Realtors standard form. Carlos and Libby initialed each page of the purchase agreement and signed their names on the last page (page 10). Guerrero's cursive signature on page 10 appears to be either "Guillermo Guerrero" or "Guillermo Guerrero W." The name "Wilbert Guillermo Guerrero" is handwritten below Guerrero's signature, where the form specifies to "[p]rint name." Zaragoza signed her name on page 10 as "Laura Z," under which "Laura Guerrero" is handwritten. The form does not indicate who wrote the names on page 10.

The Guerreros' May 7 counteroffer is a single page form appended to the last page of the purchase agreement. The counteroffer lists the sellers as "Guillermo Guerrero, Laura Guerrero." Guerrero signed the acknowledgment and acceptance section of the counteroffer in two places. One signature appears to be "Guillermo Guerrero W.," and the second appears to have the same signature, except it is not discernable whether the name is followed by a "W." "Guillermo Guerrero" is typed next to each of Guerrero's signatures. Zaragoza appears to have signed twice as "Laura Z," next to which is typed "Laura Guerrero." The Vasquezes signed their acceptance of the counteroffer below the Guerreros' names.

On June 19, 2015 the Guerreros provided the parties' escrow agent, International City Escrow, Inc. additional escrow instructions concerning how title should be vested, stating, "My previous instructions in the above numbered escrow are hereby modified/supplemented in the following particulars only: [¶]

5

Seller's vesting to read as follows:  [¶]  Guillermo Guerrero and Laura Olivia Guerrero." (Block capitalization removed.)  These instructions, on International City letterhead, are signed by the Vasquezes and the Guerreros, and "Guillermo Guerrero" is typed underneath Guerrero's signature.  The Vasquezes' additional instructions dated June 23, 2015 stated their "previous instructions in the above numbered escrow are hereby modified/supplemented in the following particulars only: [¶]  Buyer's vesting: Carlos Alberto Vasquez and Libby D. Vasquez, Husband and Wife as Community Property with Right of Survivorship." (Block capitalization removed.)

At some point Guerrero provided International City with a statement of information and personal identification that included his Social Security number, California driver's license number, and his date and place of birth.  The form has Guerrero's handwritten and signed name as Guillermo Guerrero, with no reference to the name Wilbert.

Old Republic Title provided International City with a preliminary title report dated May 27, 2015.  The title report stated the Guerreros' interest in the property was vested in "Guillermo Wilbert Guerrero and Laura Olivia Guerrero, husband and wife as joint tenants."  The report identified a deed of trust in the amount of $198,000 to secure a note for borrowers "Guillermo Wilbert Guerrero and Laura Olivia Guerrero, husband and wife as joint tenants."  The report also identified three tax liens against "Guerrero[,] Guillermo" and a 2008 abstract of judgment for $16,312.38 against "Guerrero Construction and Development, Inc. and Guillermo Guerrero." The preliminary title report did not identify the LBS abstracts.

6

Libby, Carlos, and Von all testified they had no knowledge of LBS's liens prior to receiving the October 2016 demand letter.

4. *Expert testimony regarding title searches*

Dzien had nearly 50 years of experience examining titles to real property. He worked for title insurance companies in claims handling and underwriting and as general counsel before transitioning to consulting and serving as an expert witness on title issues. Dzien testified that in compliance with the Government Code,[2] the Registrar-Recorder indexes property records based on the names of the grantor and grantee. If a prospective purchaser wants to search for encumbrances on a property, he or she must visit the Registrar-Recorder's office in Norwalk and run a search of the grantor and grantee names in the computerized index maintained at the office. To perform an index search, Dzien would first look in the grantee index to confirm the seller of the property had obtained title to the property. He then would look in the grantor index to "see what grants have been made and what liens have been placed on the property."

Dzien followed this procedure for the Domo property. Dzien first searched under the name Guillermo Guerrero in the grantee index and determined that Guerrero first acquired the

---

[2]     The Government Code identifies numerous topical indices of public records the county recorders are required to maintain. (Gov. Code, §§ 27232-27256.) Section 27257, subdivisions (a) and (b), provides the recorder may alternatively keep a "single index which shall alphabetically combine the grantors and grantees" of all persons who would otherwise be included in the topical indices.

7

Domo property in the 1990's.  He then looked at the grantor index and found a number of deeds of trust and a judgment against Guerrero.  Dzien prepared a chart, admitted as an exhibit at trial, depicting for the Domo property the "monuments of title" (chain of conveyances) from Rose Hodges to Guillermo Guerrero and Laura Zaragoza in 1999; then to Guilleromo Wilbert Guerrero and Laura Olivia Guerrero in 2004; and then to the Vasquezes in 2015.  Dzien searched the grantor/grantee index for all names used by Guerrero in the monuments of title, including the names Guillermo Guerrero, Guilleromo Guerrero, and Guilleromo Wilbert Guerrero.[3]

 Although Dzien located dozens of indexed records under Guerrero's names, he did not locate the LBS abstracts. Dzien testified as to the LBS abstracts, "[T]hey did not attach as a lien onto the property through the grantor/grantee system . . . because the name Wilbert G. Guerrero is not reflected in the monuments of title from Hodges to Vasquez."  Therefore, the recorded LBS abstracts could not be located by a proper search of the grantor/grantee index.  Dzien opined because LBS recorded its abstracts of judgment against Wilbert G. Guerrero, which is not a variation of a name in the chain of title, the Vasquezes did not have constructive notice of the LBS abstracts.

 On cross-examination, Dzien admitted he did not search the grantor/grantee index for the name Wilbert G. Guerrero, explaining "that's not how you would search . . . because the universe of names that existed in the monuments of title did not include that name," which he determined "by reviewing every

---

[3] Printouts of Dzien's search results were admitted as exhibits at trial.  The printouts show for each search the first name, last name, and middle name or initial.

document in the chain of title." Dzien did not use different combinations of the names Wilbert, Guillermo, and Guerrero besides those on the monuments of title because "that's not the way it's done."

Dzien acknowledged the statement of information Guerrero provided to International City included Guerrero's driver's license and Social Security numbers. However, the Registrar-Recorder's grantor/grantee index cannot be searched by a driver's license or Social Security number. Rather, the purpose of a statement of information is to help title insurance companies examine documents that come up during a title search for common names to eliminate names that do not relate to the people and transaction at issue. Dzien recognized that, in preparing a preliminary title report, "[t]he title company does not use the official grantor/grantee index because they can't wait in line at the recorder's office. And they maintain a computer system called the general index, and that general index is not something that has anything to do with constructive notice. It is a proprietary system that they maintain to search names."

Asked on cross-examination whether he had an opinion whether the purchase agreement impacted the Vasquezes' knowledge of the LBS abstracts, Dzien testified the handwritten name Wilbert G. Guerrero on the final page[4] was "not inquiry provoking. It's a typographical error. . . . [N]o reasonable lay person certainly would look at that and conclude that someone is utilizing an assumed name or a pseudonym."

Wallace is a real estate transactional lawyer who represents escrow companies, title companies, and real estate

---

[4] The actual handwritten name on the purchase agreement is Wilbert Guillermo Guerrero.

9

brokers in his legal practice. He is also a real estate broker and an adjunct law lecturer on real estate transactions and had served as a litigation expert for 20 years. Wallace testified a search of the Registrar-Recorder's grantor/grantee index for Wilbert G. Guerrero would identify the LBS abstracts. A printout of Wallace's search results was admitted into evidence. Asked why the name Wilbert G. Guillermo or Wilbert Guillermo Guerrero was significant, Wallace testified, "to me that's very important. That's the gentleman's legal name." Wallace based his opinion on his review of a page from the journal of the notary public who notarized Guerrero's signature on the grant deed to the Vasquezes. The journal entry listed Guerrero's name as appearing on his driver's license as "Wilbert Guillermo Guerrero" at an address in Apple Valley. However, the notary public did not testify at trial, and the journal entry (exhibit 109) was not admitted into evidence.

Asked how title insurance companies determine what liens and encumbrances are on a property, Wallace testified the companies have a "sophisticated computer system that they use . . . . It's supposed to simulate the county recorder but be more advanced and more sophisticated to determine what is of record on a subject property and what is of record against a potential grantor." These systems enable title companies to search by the Social Security number obtained from the grantor's statement of information. Wallace testified the purpose of the statement of information is to help title companies obtain more information about the grantor to confirm his identity. Old Republic Title should have used information from Guerrero's statement of information to confirm his identity, although Wallace did not know whether that was done.

10

Wallace admitted the LBS abstracts were outside the chain of title for the Domo property. He also admitted, "There's no evidence that I've seen that [the Vasquezes] had actual knowledge" of the LBS abstracts. Wallace testified, however, the Vasquezes had actual knowledge Guerrero's "legal name" was Wilbert G. Guerrero because "Mr. Guerrero signed the purchase agreement using the name Wilbert G. Guerrero. I believe he signed the counteroffer with that name. And as a buyer, the buyer ultimately is charged with that kind of knowledge."

C.      *Statement of Decision and Judgment*

Following the close of testimony, the parties filed written closing arguments, and on March 29, 2018 the court issued a tentative statement of decision. After considering and rejecting LBS's objections to the tentative decision,[5] the court filed a 41-page final statement of decision on May 31, 2018 finding in favor of plaintiffs. The statement of decision included detailed factual findings recounting the testimony at trial. The court found plaintiffs "carried their burden of proving that the abstracts of judgment recorded in 2008 by LBS were improperly indexed and not locatable by a proper search. The testimony of the plaintiffs' expert witness, Mr. Dzien, was notably specific, rigorous, comprehensive and convincing to the court. His

---

[5]      LBS objected to the trial court's findings Brighten Lending held an interest in the Domo property; LBS had no right or interest in the property; LBS had no right to make any further claim to the property; and the Vasquezes were bona fide purchasers. The court rejected LBS's objections as simply arguing why the court's ruling was "effectively 'wrong' and must be revised."

11

determination(s) that said recorded abstracts of judgment were essentially 'outside the chain of title' of the subject property were also supportive of the credible showing that the plaintiffs and each of them had no actual or constructive notice of the abstracts of judgment."

The trial court did not find credible Wallace's testimony the Vasquezes had actual knowledge Guerrero's legal name was Wilbert G. Guerrero, finding Wallace was a "slender reed" for LBS to rely on as its sole witness at trial, "as well as a dubious source of information as to matters of which he was not a percipient and/or particularly keen witness." The court noted Wallace based his opinion on his belief Guerrero signed the purchase agreement and counteroffer using the name Wilbert G. Guerrero. The court found to the contrary, "[It] is evident that the purchase agreement was not signed anywhere as 'Wilbert G. Guerrero' and that a handprinted name 'Wilbert Guillermo Guerrero' solely appeared on page 10 in Exhibit 102 in a space available to '(Print name).'" The court also found Wallace was mistaken in his belief Guerrero signed the name Wilbert G. Guerrero on the counteroffer; he did not. Citing other inconsistencies in Wallace's testimony, the court found, "Mr. Wallace's testimony was superficial, variously inaccurate and lacking in credibility."

The court concluded "the Vasquez plaintiffs acquired the subject property as bona fide purchasers for value without notice of the [LBS] abstracts of judgment."

The court entered judgment on June 21, 2018. LBS timely appealed.

12

## DISCUSSION

### A. *Governing Law of Notice*

"It is 'black-letter law' that a bona fide purchaser for value who acquires his or her interest in real property without knowledge or notice of another's prior rights or interest in the property takes the property free of such unknown interests." (*In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 437 (*Cloney*); accord, *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 (*Melendrez*) ["'"The elements of bona fide purchase are payment of value, in good faith, and *without actual or constructive notice of another's rights*."'"]; *Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451 (*Hochstein*).) Conversely, "it is an equally well-established principle of law that any purchaser of real property acquires the property subject to prior interests of which he or she has actual *or constructive* notice." (*Cloney*, at p. 437.) "Actual notice is defined as 'express information of a fact,' while constructive notice is that 'which is imputed by law.'" (*Id.* at p. 436, quoting Civ. Code, § 18.)

A bona fide purchaser without notice may seek a legal determination through a quiet title action that the title it obtained remains free and clear of any adverse interest in the property. (*Reiner v. Danial* (1989) 211 Cal.App.3d 682, 690.) "The general rule places the burden of proof upon a person claiming bona fide purchaser status to present evidence that he or she acquired interest in the property without notice of the prior interest." (*Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 367, fn. 6; accord, *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1442.)

13

Constructive notice of a lien or other interest in property arises from the proper recording of that interest. (*Cloney, supra*, 91 Cal.App.4th at p. 437 ["Every duly recorded conveyance of real property, or recorded judgment affecting title to or possession of real property, is constructive notice of the contents thereof to subsequent purchasers and mortgagees from the time of recordation."]; *Hochstein, supra*, 219 Cal.App.3d at p. 452 ["the law conclusively presumes that a party acquiring property has notice of the contents of a properly recorded document affecting such property"]; see Civ. Code, § 1213 [recorded conveyance of real property provides constructive notice to subsequent purchasers].) However, "a bona fide purchaser of real property has constructive notice of only those matters that could be located by a diligent title search." (*Dyer v. Martinez* (2007) 147 Cal.App.4th 1240, 1242 ["Because the lis pendens at issue was not indexed at the time defendants took their interests in the property, it could not have been located by a diligent search, and therefore did not provide constructive notice."]; accord, *Hochstein, supra*, 219 Cal.App.3d at p. 452 ["The California courts have consistently reasoned that the conclusive imputation of notice of recorded documents depends upon proper indexing because a subsequent purchaser should be charged only with notice of those documents which are locatable by a search of the proper indexes."].)

A purchaser may also have constructive notice of a fact affecting his or her property rights where the purchaser "'has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact.'" (*Cloney, supra*, 91 Cal.App.4th at p. 437; see Civ. Code, § 19 ["Every person who has actual notice of circumstances sufficient to put a prudent

14

person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact."].)  "[I]f the purchaser neglects to prosecute such inquiry diligently he may not be awarded the standing of a *bona fide* purchaser."  (*Asisten v. Underwood* (1960) 183 Cal.App.2d 304, 310.)  This type of constructive notice is often described as inquiry notice.  (See *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1388 (*Alfaro*) [prior cases have "differentiated constructive notice from actual knowledge and from inquiry notice"].)

In addition, notice of an adverse interest may be imputed to a purchaser from knowledge acquired by her or his agent acting within the course and scope of the agent's authority.  (*Cloney, supra*, 91 Cal.App.4th at p. 444 [escrow agent's knowledge of discrepancy regarding debtor's name on judgment lien imputed to purchaser and sufficient to give constructive notice of the lien]; *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520*,* 534 (*Triple A Management*) [escrow agent's knowledge of information obtained in escrow may be imputed to purchaser under agency theory].)

B.  *Standard of Review*

"The determination whether a party is a good faith purchaser . . . ordinarily is a question of fact; on appeal, that determination will not be reversed unless it is unsupported by substantial evidence."  (*Triple A Management, supra*, 69 Cal.App.4th at p. 536; accord, *612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1279; *Melendrez, supra*, 127 Cal.App.4th at p. 1254.)  "Under the

15

substantial evidence standard of review we examine the entire record to determine whether there is substantial evidence supporting the factual determinations of the trial court [citation], viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment." (*612 South LLC,* at p. 1279; accord, *City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1385.) "An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact. [Citations.] 'The substantial evidence [standard of review] applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial.'" (*City of Glendale*, at p. 1385; accord, *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514 (*Escamilla*).)

LBS argues we should review the trial court's ruling de novo because the facts of what notice the Vasquezes received are not in dispute. LBS is correct we independently review questions of law. (See *Cloney, supra*, 91 Cal.App.4th at p. 436 ["Because the facts in this case are undisputed, this appeal is subject to review de novo as to the legal effect of the escrow officer's knowledge that James Michael Cloney and Mike Cloney are one and the same person, and the issue whether as purchaser of the Property from the latter, respondent had constructive notice of the lien created by the recorded judgment against the former."].) But here there are disputed questions of fact as to the notice received by the Vasquezes, for which we review the record for substantial evidence. "Whether a party has notice of 'circumstances sufficient to put a prudent man upon inquiry as to a particular fact,' and whether 'by prosecuting such inquiry, he

16

might have learned such fact' [citation], are themselves questions of fact to be determined by the jury or the trial court." (*Northwestern Portland Cement Co. v. Atlantic Portland Cement Co.* (1917) 174 Cal. 308, 312; accord, *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 440.)

C.     *The Vasquezes Were Not on Inquiry Notice Guerrero Used the Name Wilbert G. Guerrero*

On appeal, LBS does not challenge the trial court's finding the Vasquezes lacked actual knowledge of the liens.  Libby, Carlos, and Brighten Lending's president Von testified they had no knowledge of the liens prior to receiving LBS's demand letter in October 2016.  Even Wallace ultimately conceded, "There's no evidence that I've seen that [the Vasquezes] had actual knowledge" of the LBS abstracts.  Rather, LBS contends the Vasquezes had constructive notice of the LBS abstracts because they were on inquiry notice Guerrero used the name Wilbert G. Guerrero.  Substantial evidence supports the trial court's finding to the contrary.

Although a purchaser may rely on the recorded chain of title, the purchaser may not "ignore information that comes to him from *outside* the recorded chain of title, to the extent such information puts him on notice of information that reasonably brings into question the state of title reflected in the recorded chain of title." (*Triple A Management, supra*, 69 Cal.App.4th at p. 531; accord, *Alfaro, supra*, 171 Cal.App.4th at p. 1389 ["though defrauded buyers will not be deemed to have constructive notice of public records, this does not insulate them from evidence of their actual knowledge of the contents of documents presented to them or from being charged with inquiry notice based on those

17

documents"]; see *First Fidelity Thrift & Loan Assn. v. Alliance Bank, supra*, 60 Cal.App.4th at p. 1445 [lender could not rely on a mistakenly recorded reconveyance of an earlier lender's deed of trust to support first priority where the borrower had listed the earlier loan on the loan application as an encumbrance and lender failed to investigate the discrepancy].)

LBS argues the Vasquezes were on inquiry notice of Guerrero's use of the first name Wilbert because the purchase agreement contained the handwritten name Wilbert Guillermo Guerrero on page 10. However, Guerrero signed the purchase agreement and the counteroffer as Guillermo Guerrero or Guillermo Guerrero W, and the typed name Guillermo Guerrero is listed three times on the counteroffer. Further, some form of Guillermo Guerrero appears repeatedly on the documents in the chain of title and those relating to the sale of the Domo property to the Vasquezes, without any other reference to Wilbert as a first name. The name Guillermo Guerrero appears on the grant deeds recorded in 1999 and 2015, and the name Guilleromo Wilbert Guerrero is on the grant deed recorded in 2004. The additional escrow instructions bear the typed name Guillermo Guerrero, and Guerrero signed his name as Guillermo Guerrero W. Guerrero's statement of information lists the seller as Guillermo Guerrero and was signed as Guillermo Guerrero W. The preliminary title report states title to the Domo property is to be vested in "Guillermo Wilbert Guerrero and Laura Olivia Guerrero." The preliminary title report also lists three tax liens against Guerrero Guillermo and an abstract of judgment recorded against "Guerrero Construction and Development, Inc. et al. and Guillermo Guerrero."

18

As Dzien testified when asked on cross-examination whether the first name Wilbert on page 10 of the purchase agreement would have placed the Vasquezes on notice of Guerrero's use of the name, Dzien responded, "It's a typographical error. . . . [N]o reasonable lay person certainly would look at that and conclude that someone is utilizing an assumed name or a pseudonym." Wallace offered a conflicting opinion: "Mr. Guerrero signed the purchase agreement using the name Wilbert G. Guerrero. I believe he signed the counteroffer with that name. And as a buyer, the buyer ultimately is charged with that kind of knowledge." We defer to the trial court's finding Dzien was credible and Wallace was not. (*City of Glendale v. Marcus Cable Associates, LLC, supra*, 231 Cal.App.4th at p. 1385; *Escamilla, supra*, 141 Cal.App.4th at p. 514.) As the trial court found, Wallace's testimony was "superficial, variously inaccurate and lacking in credibility," noting Guerrero never signed the purchase agreement as Wilbert G. Guerrero, and the only name on the counteroffer was Guillermo Guerrero.

In addition, the Vasquezes were not sophisticated in property transactions, and they relied on their realtor and the escrow agent (International City) to prepare the documents. Libby had no recollection of the realtor pointing out the use of the name Wilbert on the purchase agreement.[6] The realtor likewise

_____

[6]     LBS contends the Vasquezes are deemed as a matter of law to have knowledge of the information in the purchase agreement because they signed it, citing *Curtis v. United Transfer Co.* (1914) 167 Cal. 112, 114. *Curtis* is inapposite. Under *Curtis*, a party to a contract is deemed to have constructive knowledge of the contents of the contract and cannot "assert [their] failure to read it or ignorance of its contents to overcome the legal effect of the

did not discuss variations in Guerrero's name with Carlos.  LBS relies on *Cloney, supra*, 91 Cal.App.4th at page 441, to support its argument the trial court should have imputed knowledge of the realtor and International City to the Vasquezes.  In *Cloney*, the seller of property who used the name Mike Cloney provided his driver's license with his full legal name James Michael Cloney to the escrow agent in connection with the sale.  The Court of Appeal concluded the escrow agent's knowledge of the seller's full legal name was imputed to the purchaser, who therefore took the property subject to a judgment lien against James Michael Cloney, even though the title company's search of the county records for Mike Cloney did not reveal the judgment lien.  (*Id*. at pp. 434, 441.)  The *Cloney* court held, "[A]n undisputedly valid judgment lien recorded against a judgment debtor under one name does impart constructive notice of the lien to a subsequent purchaser to whom the same judgment debtor sells real property under a different name, where while acting within the course and scope of his or her agency the purchaser's escrow agent gains actual knowledge of *both* of the names used by the seller." (*Id.* at p. 444.)

    In contrast to *Cloney*, there is no evidence the Vasquezes' realtor or International City had any knowledge beyond what is shown on the face of the documents.  There was no testimony at trial as to who prepared the purchase agreement, who wrote the

---

paper as a contract between the defendant and herself." (*Id*. at p. 114.)  Here, the question is not whether the Vasquezes were bound by the purchase agreement, but whether information on the purchase agreement, in light of other contrary information, provided the Vasquezes constructive notice Guerrero used the first name Wilbert.

name Wilbert Guillermo Guerrero on page 10, or what information Guerrero provided to International City to establish his identity.  LBS points to Guerrero's June 19, 2015 additional escrow instructions to International City modifying his "previous instructions" to provide for seller's vesting to read "Guillermo Guerrero and Laura Olivia Guerrero."  According to LBS, International City would not have needed to change the vesting of title unless the prior vesting was under a different name.  This argument is based on pure speculation.  There is no evidence International City possessed any previous vesting information, let alone that the previous information provided for title to be vested in the name Wilbert G. Guerrero.  Further, as the Vasquezes note in their respondents' brief, their additional escrow instructions similarly advised International City that their vesting should be in the names "Carlos Alberto Vasquez and Libby D. Vasquez," supporting a contrary view the "additional" escrow instructions were instructions in the first instance for how the title should read.[7]

LBS also seeks to impute to the Vasquezes knowledge of the notary public who notarized Guerrero's name on the 2015 grant deed that Guerrero used the name Wilbert Guillermo Guerrero on his driver's license, pointing to the notary's journal entry in connection with the sale.  But as noted, the exhibit was not admitted into evidence, and the notary public did not testify at trial.  Further, in contrast to *Cloney, supra*, 91 Cal.App.4th at

---

[7]    In its reply, LBS argues the Vasquezes' additional escrow instructions were "clearly done" to modify the name on title to "Libby D. Vasquez" from "Libby Dorcas Vasquez," which was the name on the purchase agreement.  This too is mere speculation.

21

page 441, there is no evidence the notary acted as an agent of the Vasquezes.

Finally, LBS contends Guerrero's statement of information, which included his driver's license and Social Security numbers, placed Old Republic Title, International City, and the Vasquezes on constructive notice Guerrero's legal name was Wilbert Guillermo Guerrero because they could have performed a search of recorded documents using the numbers. But the statement of information on its face lists Guerrero's name as Guillermo Guerrero, with no mention of the name Wilbert other than the initial "W" at the end of Guerrero's signature. Further, as Dzien and Wallace testified, the purpose of the statement of information is to help the title company eliminate documents that do not belong to a seller with a common name, not to expand the universe of documents to be searched.

Moreover, Dzien testified the Registrar-Recorder's grantor/grantee database cannot be searched by driver's license or Social Security number. Although title companies have proprietary computer systems that can search for information by driver's license and Social Security numbers, there is no authority for charging a purchaser with knowledge of what the proprietary search would reveal. Further, "[i]t is a "'well-settled rule . . . that a title insurance company is not the agent of its insured, and the insurer's knowledge is not imputed to its insured."'" (*Cloney, supra*, 91 Cal.App.4th at pp. 438-439 ["whatever knowledge [the title company] had about Cloney's identity and the state of his title as a matter of actual or constructive notice, or which it arguably *should* have had as a matter of its duties as a title insurer, is essentially irrelevant to this case"]; accord, *Lewis v. Superior Court* (1994) 30 Cal.App.4th

22

1850, 1869-1870 ["The trial court essentially misconceived [the title company's] role when it stated that '[the title company's] lack of reasonable diligence in acting upon the information it discovered, is imputed to [the purchasers].'"].)[8]

D.  *The Vasquezes Were Not on Constructive Notice of the LBS Abstracts Recorded Under a Different First Name*

LBS contends Guerrero's use of different names on the sales documents and the "additional names and variations of Mr. Guerrero's name" in the chain of title placed the Vasquezes on constructive notice of the LBS abstracts. They did not. Contrary to LBS's argument, the variations in Guerrero's name are consistent with his use of the first name Guillermo (or Guilleromo) and the last name Guerrero. The names appearing in the title history are Guillermo Guerrero in 1999; Guilleromo Wilbert Guerrero in 2004; and Guillermo Guerrero in 2015. As discussed, the purchase agreement, counteroffer, statement of information, additional escrow instructions, and preliminary title report all reflect the name Guillermo Guerrero or Guillermo Wilbert Guerrero, except for the single handwritten name Wilbert Guillermo Guerrero on page 10 of the purchase agreement.

Dzien testified the proper procedure for performing an index search is to search the grantor/grantee index for the names

_____

[8]     A purchaser who receives and reads the preliminary title report is on inquiry notice of encumbrances identified in the report. (*Alfaro, supra*, 171 Cal.App.4th at pp. 1389-1390.) However, there is nothing in the preliminary title report in this case placing the Vasquezes on inquiry notice Guerrero used the first name Wilbert.

23

in the chain of title—Guillermo Guerrero and Guilleromo Wilbert Guerrero, which search did not reveal the LBS abstracts. Wallace did not dispute Dzien's methodology or search results; rather, Wallace testified a search for Wilbert G. Guerrero identified the LBS abstracts. Wallace and Dzien both testified the LBS abstracts recorded against Wilbert G. Guerrero were outside the chain of title for the Domo property. Although Guerrero used Wilbert as a middle name, LBS cites to no authority an index search needs to be performed using a middle name as a first name.

*Hochstein, supra*, 219 Cal.App.3d 447, relied on by the trial court, is on point. In *Hochstein*, the wife in a dissolution action recorded an abstract of judgment against her former husband, indexed in the husband's name. (*Id*. at p. 449.) The abstract was later modified to include the husband's current wife Portia. (*Id*. at p. 450.) In response to the former wife's effort to enforce a judgment lien against the purchasers of property from Portia, the Court of Appeal concluded the purchasers were not on constructive notice of the abstract because at the time of the sale, Portia was not indexed as a judgment debtor. (*Id*. at p. 454.) The *Hochstein* court explained, "The California courts have consistently reasoned that the conclusive imputation of notice of recorded documents depends upon proper indexing because a subsequent purchaser should be charged only with notice of those documents which are locatable by a search of the proper indexes. Conversely, where the document is improperly indexed and hence not locatable by a proper search, mere recordation is insufficient to charge the subsequent purchaser with notice." (*Id*. at p. 452.) Just as the purchasers in *Hochstein* were not on constructive notice of the abstract of judgment indexed only against the

24

former husband's name, the Vasquezes were not on constructive notice of the LBS abstracts recorded only against Wilbert G. Guerrero.

The holding in *Orr v. Byers* (1988) 198 Cal.App.3d 666 (*Orr*), relied on by the Vasquezes, is also on point. In *Orr*, a judgment creditor obtained a money judgment against a man with the surname Elliott, but the creditor recorded an abstract of judgment using the names "Elliot" and "Eliot." (*Id.* at p. 667.) Elliott subsequently sold property to a purchaser using the name Elliott, and the purchaser's title search failed to uncover the abstract of judgment. (*Id.* at pp. 667-668.) In a subsequent action by the creditor to enforce his judgment, the creditor argued the purchaser had inquiry notice of Elliott's real name under the doctrine of *idem sonans*.[9] (*Id.* at p. 668.) The Court of Appeal rejected the creditor's argument "a title searcher [should] be charged with knowledge of such alternative spellings" (*id.* at p. 669), explaining, "[T]he burden is properly on the judgment creditor to take appropriate action to ensure the judgment lien will be satisfied . . . . [T]o rule otherwise is to grant the judgment creditor a 'free ride.'" (*Id.* at p. 672.) Similarly, the burden was on LBS to record the abstracts of judgment against Guerrero under the name appearing on the title to his property, not on the

---

[9] "'The doctrine of idem sonans is that though a person's name has been inaccurately written, the identity of such person will be presumed from the similarity of sounds between the correct pronunciation and the pronunciation as written. Therefore, absolute accuracy in spelling names is not required in legal proceedings, and if the pronunciations are practically alike, the rule of idem sonans is applicable.'" (*Orr, supra*, 198 Cal.App.3d at p. 669.)

Vasquezes to identify the LBS abstracts recorded on a variation of Guerrero's name using his middle name as a first name.

## DISPOSITION

The judgment is affirmed.  Plaintiffs are to recover their costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


DILLON, J.*

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 7/14/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CARLOS ALBERTO VASQUEZ et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> LBS FINANCIAL CREDIT UNION, <br><br> Defendant and Appellant. | B292390 <br><br> (Los Angeles County Super. Ct. No. VC066086) <br><br> ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION <br><br> NO CHANGE IN THE APPELLATE JUDGMENT |

THE COURT:*

The opinion in the above-entitled matter filed on June 17, 2020 is modified as follows:

The opinion was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

On page 2, the first two introductory paragraphs are deleted and replaced with the following two paragraphs:

LBS Financial Credit Union (LBS) appeals from a judgment entered after a court trial for Carlos and Libby Vasquez and mortgagee Brighten Lending (collectively, plaintiffs) in their action for quiet title and declaratory and injunctive relief regarding property the Vasquezes purchased in 2015 from Guillermo Guerrero and his wife.  Seven years before the purchase, LBS obtained two money judgments against Guerrero and recorded abstracts of judgment (LBS abstracts) against Wilbert G. Guerrero, a name that does not appear in the chain of title for the property.

On appeal, LBS contends the trial court erred in finding the Vasquezes were bona fide purchasers, asserting the Vasquezes had constructive notice of the LBS abstracts based on Guerrero's use of different variations of his name on multiple title and sale documents, including one handwritten reference in the 10-page purchase agreement to the name Wilbert Guillermo Guerrero.  However, substantial evidence supports the trial court's determination the single handwritten reference to the first name Wilbert on the purchase agreement did not place the Vasquezes on inquiry notice that Guerrero used Wilbert as a first name because every document relating to the sale and in the chain of title used the typewritten first name "Guillermo" or "Guilleromo" and last name "Guerrero," and Guerrero consistently signed his own name as Guillermo Guerrero or

2

Guillermo Guerrero W.  Moreover, because the abstracts of judgment recorded using the name Wilbert G. Guerrero were not in the chain of title for the property, a diligent search of the index of property records in the registrar's office would not (and did not) reveal the abstracts.  It is not the purchasers' obligation to search the index of property records for documents recorded incorrectly using the seller's middle name as a first name.  We affirm.

There is no change in the appellate judgment.

---

\* PERLUSS, P. J.     FEUER, J.     DILLON, J.\*\*

\*\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3